735 P.2d 1134

**Ysidro MOLINAR, Jr., N. Dean Ricer, E. Navarrette, D.R. Greene, W.H. Baglemann, T.L. Potter, N. Rosacker and L. Yturralde, Plaintiffs-Appellees,**

v.

**CITY OF CARLSBAD, Defendant-Appellant.**

No. 16281.

Supreme Court of New Mexico.

April 14, 1987.

Matkins & Davis, B.G. Davis, Carlsbad, for defendant-appellant.

W.T. Martin, Jr., Michael T. Murphy, Carlsbad, for plaintiffs-appellees.

## OPINION

SOSA, Senior Justice.

Plaintiffs brought suit against their former employer, the City of Carlsbad (City), to recoup the value of retirement benefits allegedly lost as a result of the City's breach of a duty to advise Plaintiffs when their employer became the State of New Mexico. The trial court permitted the City to amend its answer to raise the defense that the statute of limitations had run on Plaintiffs' claim. After a hearing, the court ruled that the City was estopped, by the actions of its former attorney, from asserting the defense. The City appeals to this Court. We affirm.

The City raises two issues on appeal:

I. The trial court erred in applying estoppel under the facts of this case; and

II. The trial court incorrectly concluded that the City owed Plaintiffs a duty to disclose the effect of their employment transfer.

## FACTS

Plaintiffs worked at the Living Desert State Park (Park). The City operated the Park from July 1, 1972 through July 1, 1978, when the State resumed manage-

ment. From about July 1, 1970 through July 1, 1980, the City provided for its employees a non-contributory pension plan known as the National Industrial Group Pension Plan (NIGPP). The terms of the NIGPP had been negotiated by the United Steelworkers of America (Steelworkers), which represented Plaintiffs' bargaining unit. The City funded the plan by paying into it a certain sum per hour for all hours worked by City employees. For an employee to be vested with any retirement benefits, the NIGPP required ten years of service.

None of the Plaintiffs had accumulated ten years of service at the time the State took over the Park. They were given the choice, in 1978, of seeking other jobs within the City or remaining at the Park and becoming State employees. All Park employees chose to terminate their employment with the City and sign on with the State. They then became eligible to participate in the Public Employees Retirement Association (PERA) Retirement Plan. PERA told Plaintiffs that they would have to pay cash to purchase into credits equivalent to their years of service with the City. No attempt was made by the City to protect or "roll-over" Plaintiffs' NIGPP contributions, nor to advise Plaintiffs or their union of the effects of termination upon their pension rights.

In 1980, the City did negotiate with the Steelworkers, one result of which was an agreement that City participation in the NIGPP would terminate on June 30, 1980 and henceforth City employees would be covered by PERA. Plaintiffs meanwhile had retained attorneys to negotiate with the City on their behalf. Messrs. Martin and Murphy met several times with counsel for the City, George L. Watkins, who assured them that the matter could be satisfactorily settled. Plaintiffs relied on Watkins' representations that their claim was meritorious and that litigation was unnecessary. Accordingly, they did not file suit until September 1983.

The parties stipulated to certain basic facts at trial on July 2, 1985. Then on July 8, 1985, the City moved to amend its answer to raise the defense of statute of limitations and to dismiss the complaint. The court heard the motion to amend on October 28, 1985 and subsequently granted the motion. Again the City moved to dismiss on October 29, 1985. The court heard the motion on November 6, 1985, then ruled that the City was estopped from asserting the defense of statute of limitations. Finally, on January 7, 1986, the court entered judgment in favor of Plaintiffs. The City appealed to this Court.

## I. Statute of Limitations

■ Plaintiffs' complaint alleged that they were employed by the City on or about June 30, 1980. The stipulation at trial, however, correctly recited that Plaintiffs quit with the City in 1978. Accordingly, the City moved to amend its pleading to conform to the evidence. We agree with the City that the decision to allow or deny amendment of the pleadings to assert the defense of the statute of limitations rests within the sound discretion of the trial court. *See Apodaca v. Unknown Heirs of the Tome Land Grant*, 98 N.M. 620, 651 P.2d 1264 (1982). Here the trial court did not abuse its discretion in permitting the City to amend its answer to raise the defense.

■ We do not accept, however, the City's argument that the complaint should be dismissed because of the statute of limitations. The City asserts that Plaintiffs' failure to file suit sooner was solely owing to a misunderstanding that the appropriate period was six years, as prescribed in NMSA 1978, Section 37-1-3, or at least the four years provided by NMSA 1978, Section 37-1-4. In its defense, the City introduced the correct period of three years for actions against municipalities set forth in NMSA 1978, Section 37-1-24. Thus, even if the cause of action were found to have arisen on July 1, 1980, the suit would still be barred.

Furthermore, the City contends that Section 37-1-24 is *sui generis* and in derogation of the common law, meaning that it must be strictly construed and applied. We are unconvinced by the City's efforts to

analogize Section 37–1–24 to the limitations of the Wrongful Death Act (NMSA 1978, § 41–2–2 (Repl.Pamp.1986)), and the Workmen's Compensation Act (NMSA 1978, § 52–1–31 (Cum.Supp.1986)). Concerning those Acts we have refused to extend the period of limitations because the statutory scheme which created a new right also properly limited the time for the exercise of that right. *See Perry v. Staver*, 81 N.M. 766, 473 P.2d 380 (1970) (Wrongful Death Act); *Swallows v. City of Albuquerque*, 61 N.M. 265, 298 P.2d 945 (1956) (Workmen's Compensation Act).

▪ Here we are concerned with a statute which creates no new right, but only reduces the period of exposure to liability of cities, towns, and villages in this state. That protection is not absolute, though. We have held that the doctrine of estoppel can be applied against a City. *See City of Carlsbad v. Neal*, 56 N.M. 465, 245 P.2d 384 (1952). Furthermore, the conduct of a party may estop it from raising the statute of limitations as a defense. *See Martinez v. Earth Resources Co.*, 90 N.M. 590, 566 P.2d 838 (Ct.App.1977). This principle has been codified in the Workmen's Compensation Act itself, which provides that failure to file "shall not deprive such person [otherwise entitled to compensation] of the right to compensation where the failure was caused in whole or in part by the conduct of the employer or insurer which reasonably led the person entitled to compensation to believe the compensation would be paid." NMSA 1978, § 52–1–36 (Cum.Supp.1986). It is clear that offers or promises of settlement, in connection with other conduct of defendants upon which plaintiffs have reasonably relied, may have the effect of tolling the statute of limitations. *See Owens v. Eddie Lu's Fine Apparel*, 95 N.M. 176, 619 P.2d 852 (Ct.App. 1980).

▪ There was substantial evidence before the trial court to support the findings that the City's attorney had authority to act on behalf of the City; that he represented that settlement should be forthcoming and would be more expeditious in the absence of litigation; and that Plaintiffs

postponed filing suit as he requested. Reasonable reliance upon the representations of the City's attorney led to the expiration of the limitation period prior to Plaintiffs' complaint being filed. We affirm the conclusion of the trial court that equitable considerations should estop the City from prevailing on its defense of the statute of limitations.

**II. Duty to Disclose**

The City challenges the trial court's conclusion that the City breached its duty under the collective bargaining agreement with the Steelworkers "to fully disclose, discuss and negotiate with the employees" concerning the effect upon pension rights of their transfer of employer while their job duties remained the same. This conclusion, contends the City, flies in the face of the stipulation entered into at trial that all the plaintiffs knew, in 1978, that they would lose their credits with the NIGPP if they accepted employment with the State. Moreover, the stipulation stated that the City had not yet made any agreement to purchase into PERA on behalf of any past or present employees. Nevertheless, the trial court ordered the City to reimburse Plaintiffs for the purchase of PERA credits in amounts equivalent to the City's contributions on their behalf to the NIGPP.

Plaintiffs' point, on the other hand, is that the City did negotiate with the Steelworkers in 1980 with respect to the transfer of pension benefits from the NIGPP to PERA. If the City had stayed with the NIGPP, then all employees, including Plaintiffs, who had less than ten years service would have no vested benefits. Conversely, it is conceivable that the City will agree to use the NIGPP funds to purchase PERA credits for past and present employees, thus preserving the NIGPP contributions of those City employees who had less than ten years of service at the time of transfer.

▪ This is properly a matter for collective bargaining. But these Plaintiffs were deprived of the benefits of that bargain. In 1978 they knew that they did not have ten years vested credit with the NIGPP.

What they did not know is that the City would switch over in two years to a system which might have preserved their contributions.

 We affirm the conclusion of the trial court that the City breached its duty to discuss and negotiate the pension consequences of the change of employer from City to State. Furthermore, the existence of such a duty and its acknowledgement by the City may be inferred from the representations of the late attorney for the City. Indeed, had he lived, this matter might never have gone to trial.[1]

For the foregoing reasons, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and STOWERS, J., concur.

---

**1.** We observe that the amounts in question are not huge; the costs to the City of litigation may well exceed the value of the judgment.