## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-IA-00187-SCT

*MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY AND MARTY DAVIS*

*v.*

*OLUR V. STRINGER*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/1997 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JIM FRAISER |
| ATTORNEYS FOR APPELLEE: | WILLIAM R. COUCH |
| | CURTIS R. HUSSEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 6/3/1999 |
| MOTION FOR REHEARING FILED: | 6/15/99 |
| MANDATE ISSUED: August 12, 1999 | |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. On June 20, 1994, appellee Olur V. Stringer was involved in an automobile accident with Marty Davis, an employee of the Mississippi Department of Public Safety. Following the accident, Stringer filed an accident report with the Mississippi Highway Safety Patrol and sent a letter to the state claims investigator but filed no notice of claim as required by Miss. Code Ann. § 11-46-11 (Supp. 1993). On June 19, 1996, Stringer filed his complaint in the Circuit Court of George County against appellants Mississippi Department of Public Safety and Marty Davis. The Department of Public Safety and Davis filed a motion to dismiss the action which was denied by the Circuit Court on January 8, 1997. This Court granted the Department and Davis permission to prosecute an interlocutory appeal. They now raise the following issues:

**I. DID THE LOWER COURT PROPERLY DENY THE STATE'S MOTION TO DISMISS WHERE THE COMPLAINT WAS FILED AFTER THE APPLICABLE STATUTE OF LIMITATIONS HAD RUN?**

**II. DID THE LOWER COURT PROPERLY DENY THE STATE'S MOTION TO DISMISS WHERE THE JURISDICTIONAL NOTICE OF CLAIM PROVISIONS OF**

## STANDARD OF REVIEW

¶2. This Court conducts de novo review of questions of law raised by Rule 12(b)(6) motions. *Wells v. Panola County Bd. of Educ*., 645 So.2d 883, 888 (Miss.1994); *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss.1990); *UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.*, 525 So.2d 746, 754 (Miss.1987). Well-pleaded facts must be taken as true, and dismissal should be granted only where it appears beyond a reasonable doubt that the Plaintiff can prove no set of facts in support of a claim that entitles him to relief. *Weeks v. Thomas*, 662 So.2d 581, 585 (Miss.1995); *Overstreet v. Merlos*, 570 So.2d 1196, 1197 (Miss.1990).

## DISCUSSION

### I. OLUR STRINGER FILED HIS COMPLAINT AGAINST THE STATE AFTER THE LIMITATIONS PERIOD ALLOWED BY MISS. CODE ANN. § 11-46-11 HAD LAPSED.

¶3. The threshold inquiry in the present case is whether the action was commenced within the time period allowed pursuant to the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1 to -23 (Supp.1993). Section 11-46-11(3) provides the applicable statute of limitations in actions against the state or its political subdivisions, and reads as follows:

> All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful, or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as provided by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days. The limitations period here shall control and shall be exclusive in all actions subject to and brought under the provisions of this chapter, notwithstanding the nature of the claim, the label or other characterization the claimant may use to describe it, or the provisions of any other statute of limitations which would otherwise govern the type of claim or legal theory if it were not subject to or brought under the provisions of this chapter.

Miss. Code Ann. § 11-46-11 (3) (Supp. 1998).

¶4. The one year limitations period allowed by the statute may be extended for a period of ninety-five days provided a pre-suit notice of claim is filed by the claimant at any point during the one year period. The undisputed facts in the instant case show that the accident occurred on June 20, 1994. However, Stringer did not file his complaint against the Department of Public Safety and Marty Davis until June 19, 1996. Consequently, even if Stringer had filed a notice of claim within one year from the date of the accident thus extending the limitations period for ninety-five days, the complaint would nevertheless have been filed beyond the time period allowed by statute.

¶5. Stringer argues that the Appellants should be estopped from asserting the statute of limitations as a defense. He alleges that the Appellants deliberately delayed his claim until the statute of limitations had run. A careful review of the record reveals that the Appellants were diligent in working with Stringer to resolve his claim, as evidenced by prompt responses to Stringer's letters and telephone calls, and more than one offer to settle the claim. Although the facts are few, we reiterate that they are undisputed.

¶6. Michael Green was the Assistant Claims Manager at Sedgwick James, a company that evaluates claims for the Department of Public Safety. He evaluated Stringer's claim and dealt directly with Stringer concerning the car accident. On June 27, 1994, following the June 20 accident, Green wrote Stringer requesting he contact him about the accident. Following this letter, the two men corresponded often in an effort to satisfy Stringer's claim.

¶7. Approximately three months after the accident, Stringer was paid $2,500 for property damage to his vehicle. Subsequently, on or about February 22, 1995, Green made Stringer an offer to settle the claim for $8,000. Stringer responded by letter dated February 23, 1995, rejecting that offer. The reason he advanced for rejecting the offer was that the amount would not even cover the wages he lost due to the accident. Green's prompt reply, dated February 28, 1995, informed Stringer that this was the first he had heard of the lost wages claim and that in order to evaluate the lost wages claim he would need Stringer to fill out a form and return it to Green, so that he could request the necessary information from Stringer's employer. A subsequent offer of $10,000 was then made which Stringer also rejected. On April 17, 1995, Stringer wrote Green requesting that Green contact him. We find no other mention of Green in the record except during the hearing in which Stringer's attorney mentioned that Green was replaced by Gina Connell.

¶8. On September 1, 1995, after the statute of limitations had run, Gina Connell, a field claim representative from Sedgwick James, wrote to Stringer informing him that they had received his employment records and requesting that he contact her. The record is unclear as to whether he responded. Stringer filed his complaint with the Circuit Court of George County on June 19, 1996, almost two years to the day after the accident.

¶9. Stringer argues that the doctrine of equitable estoppel should prevent the Appellants from asserting the statute of limitations as a defense. He argues that according to the Ninth Circuit case of *United States v. Lazy FC Ranch*, the estoppel doctrine can be applied to the government "where justice and fair play require it" for example, where "the government's wrongful conduct threatens to work a serious injustice and if the public's interest would not be unduly damaged by the imposition of estoppel. . ." *United States v. Lazy FC Ranch*, 481 F.2d 985, 988- 989 (9th Cir. 1973). However, his reliance on *Lazy FC Ranch* is misplaced because *Lazy FC Ranch* does not provide authority for applying estoppel to circumvent a statute of limitations.

¶10. After careful research, we find no precedent where this Court has applied the doctrine of equitable estoppel to excuse a plaintiff's failure to comply with the statute of limitations of the Tort Claims Act. We have allowed the doctrine to estop the sovereign's assertion that a claimant did not substantially comply with the pre-suit notice of claim provisions of the Act. In *Carr v. Town of Shubuta*, No. 96-CT-01266-SCT, 1999 WL 62772 (Miss. 1999), we found that the "Report of Public Liability" which Carr completed at the office of the city clerk sufficiently complied with the pre-suit notice of claim provisions of the Tort Claims Act. We held that where the form had been provided by the office of the city clerk and settlement negotiations were ongoing, the city was estopped from asserting that the notice of claim form was not in substantial compliance with the notice provisions of the Act.

¶11. *Carr* is not applicable to the present case. We need not reach the question of whether Stringer's notice of claim was sufficient because Stringer neglected to file his claim until two years after the accident occurred. The applicable statute of limitations provides for one year plus ninety-five days from the time of the accident, provided that the claimant complies with the notice provisions of the Act. In *Carr* we cited

favorably a Wisconsin Supreme Court case in which that court remarked that a notice of claim statute is "not a statute of limitation but imposes a condition precedent to the right to maintain an action." *Carr v. Town of Shubuta*, 1999 WL 62772, \*4 (quoting *Mannino v. Davenport*, 99 Wis.2d 602, 614, 299 N.W.2d 823, 828 (1981)). We have previously held that the timely filing of notice is a jurisdictional issue. *City of Jackson v. Lumpkin*, 697 So. 2d 1179, 1181 (Miss. 1997), overruled on other grounds, *Carr v. Town of Shubuta*, 1999 WL 62772 (Miss.1999). Notice may substantially comply with the statute so long as it is timely filed. Additionally, while inequitable or fraudulent conduct does not have to be established to estop an assertion of an inadequate notice of claim defense, inequitable or fraudulent conduct *must* be established to estop a party from asserting a statute of limitations defense. *Carr v. Town of Shubuta*, 1999 WL 62772, \*4 (citing *Mannino v. Davenport*, 99 Wis.2d 602, 614, 299 N.W.2d 823, 828).

¶12. We have long held that the elements of equitable estoppel are as follows:

> Conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence. The burden of establishing the elements of an estoppel is on the party asserting the estoppel. The existence of the elements of an estoppel must be established by the preponderance of the evidence.

*Chapman v. Chapman*, 473 So. 2d 467, 470 (Miss. 1985) (citations omitted).

¶13. Although under certain circumstances a defendant's actions may be such that estop that defendant from claiming the protection of a statute of limitations, we do not agree that equitable estoppel should be applied so liberally as to allow a plaintiff to assert estoppel where no inequitable behavior is present. Statutes of limitations are well established in our judicial system. We have stated their purpose before as follows:

> The primary purpose of statutory time limitations is to compel the exercise of a right of action within a reasonable time. These statutes are founded upon the general experience of society that valid claims will be promptly pursued and not allowed to remain neglected. They are designed to suppress assertion of false and stale claims, when evidence has been lost, memories have faded, witnesses are unavailable, or facts are incapable of production because of the lapse of time.

> Accordingly, the fact that a barred claim is a just one or has the sanction of a moral obligation does not exempt it from the limitation period. These statutes of repose apply with full force to all claims and courts cannot refuse to give the statute effect merely because it seems to operate harshly in a given case. The establishment of these time boundaries is a legislative prerogative. That body has the right to fix reasonable periods within which an action shall be brought and, within its sound discretion, determine the limitation period....

> Deficiencies, if such there should be, in statutes of limitation should be remedied by the legislature. It should not be the province or function of this court to intrude upon an area peculiarly within the channel of legislative action....

*Smith v. Sneed*, 638 So.2d 1252 (Miss. 1994).

¶14. Additionally, as to the one-year statute of limitations in the Mississippi Tort Claims Act, we have

specifically found that it's purpose is to protect the State's interest in "conserving government funds and protecting the public health and welfare at the earliest possible moment." **Barnes v. Singing River Hospital Systems**, 1999 WL 22325, *5 (Miss. 1999) (*citing* **City of Jackson v. Lumpkin**, 697 So.2d 1179 (Miss.1997), overruled on other grounds).

¶15. A review of the law of other states, while not controlling, is helpful to our determination of this issue. The South Carolina Supreme Court held in **Black v. Lexington School Distr. No. 2**, 488 S.E.2d 327, 330 (S.C. 1997), that "the mere fact that settlement negotiations have been undertaken is no bar to the defendant's assertion of the statute of limitations." That court did hold that it is possible for a statute of limitations to be estopped equitably and discussed the situation as follows:

> Under South Carolina law, "a defendant may be estopped from claiming the statute of limitations as a defense if 'the delay that otherwise would give operation to the statute had been induced by the defendant's conduct.'" Such inducement may consist either "of an express representation that the claim will be settled without litigation or conduct that suggests a lawsuit is not necessary."

*Id.*

¶16. In **Jarvis v. City of Stillwater**, 732 P.2d 470 (Okla. 1987), the claimant received a letter from the city that asked for more information regarding medical expenses and mentioned an ongoing investigation, the results of which would be revealed to Jarvis upon completion. Following the letter, the city wholly failed to communicate with Jarvis. Jarvis argued on appeal that the letter induced him to delay bringing suit because he was awaiting further correspondence from the city. The court in Jarvis found that there was no support for a claim of equitable estoppel, and that "the Act requires, without exception, that the plaintiff give notice and commence an action within the prescribed statutory time limits."

¶17. In **Molinar v. City of Carlsbad**, 735 P.2d 1134, 1137 (1987), the city attorney assured the claimants that the matter could be satisfactorily settled. The claimants relied on the representation that litigation was unnecessary and postponed filing suit as requested. The Court found that "[i]t is clear that offers or promises of settlement, *in connection with other conduct of defendants upon which plaintiffs have reasonably relied*, may have the effect of tolling the statute of limitations." *Id.* at 1137 (emphasis added).

¶18. Finally, in **Woodard v. Lincoln**, 588 N.W.2d 831 (Neb. 1999), a cyclist was struck by a city bus. The cyclist was Phillip Woodard, and he and his wife sued the city of Lincoln in a negligence action brought pursuant to the Nebraska Political Subdivisions Tort Claims Act. A claims specialist from the city's risk management office met with the Woodards and asked them "not to retain counsel, but instead to negotiate directly with the City." The meeting was memorialized in a "Letter of Understanding" that specified that the Woodards would receive voluntary payments from the City, but that those payments would stop if either side retained counsel "for the purpose of representation for the May 28, 1992 accident." The letter also specifically stated that it "reserve[d] the rights of Mr. and Mrs. Philip Woodard to claim damages in the future on account of the . . . accident." The city stopped making the voluntary payments on April 28, 1993, and Philip Woodard filed a notice of claim letter on May 12. The city made several offers to settle the claim, none of which were accepted by the Woodards. The Woodards subsequently filed a claim for damages on March 26, 1996. The city countered that the claim was barred by the two year statute of limitations.

¶19. The Supreme Court of Nebraska found that there was "no reason to place the tort claims acts outside

the reach of the doctrine of equitable estoppel." The *Woodard* Court found that equitable estoppel did apply to prevent the barring of Woodard's claim by the statute of limitations. The reasoning offered was that considered together, the statements made to Woodard gave "rise to the reasonable inference that the City intended to convey to Philip that his claim would be settled rather than litigated. As the filing of a petition is unnecessary if there is to be no litigation it is a reasonable inference that the City also intended to convey the impression that no petition need be filed at all. Certainly the concept that no petition need be filed at all includes the concept that no petition need be filed within the statute of limitations." *Id.* at 837. Additionally, the Court held that "*the mere pendency of negotiations during the period of a statute of limitations, which are conducted in good faith with a view to ultimate compromise, is not of itself sufficient to establish an estoppel.*"*Id.* (emphasis added).

¶20. We find no allegation or evidence that the State misled Stringer to believe that he need not comply with the notice and statute of limitations provisions in the statute. Although settlement negotiations were ongoing between the parties, there was never any representation by the Appellants that the statute of limitations was tolled. Never did Stringer allege that the Appellants led him to believe that he need not comply with the statute, or that he had already complied with the statute. He vaguely alleges that he was given assurances that "he was doing what was proper to pursue his claim." There is simply no evidence to support a claim of equitable estoppel in this case. We agree with the Nebraska Supreme Court that good faith settlement negotiations alone are not sufficient to waive the statute of limitations.

¶21. Though statutes of limitation may sometimes have harsh effects, it is not the responsibility of the State, nor any other potential defendant, to inform adverse claimants that they must comply with the law. We find that the Appellants have in no way conducted themselves in a manner that could be described as inequitable or fraudulent. Therefore, Stringer's argument that the State is estopped from asserting the statute of limitations as a defense is without merit.

¶22. This Court has recently adopted substantial compliance as the standard by which the validity of a pre-suit notice of claim is judged. *Reaves v. Randall*, No. 97-CA-00982-SCT, 1999 WL 161259 (Miss.1999). This authority does not apply here because the action was not timely commenced. Therefore, the trial court erred as a matter of law in denying the State's motion to dismiss.

## <u>CONCLUSION</u>

¶23. We therefore reverse the judgment of the George County Circuit Court and render judgment in favor of the Mississippi Department of Public Safety and Marty Davis, finally dismissing with prejudice Olur V. Stringer's complaint and action since they are barred by the one year statute of limitations contained in Miss. Code Ann. § 11-46-11(3) (Supp. 1998).

¶24. **REVERSED AND RENDERED.**

**PRATHER, C.J., PITTMAN, P.J., SMITH AND WALLER, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. COBB, J., NOT PARTICIPATING.**

¶25. In my view this case presents a contested issue of material fact as to whether the Department of Public Safety should be equitably estopped from claiming the expiration of the statute of limitations. For that reason, I respectfully dissent.

¶26. This Court held that a determination of whether the doctrine of estoppel will bar a debtor's statute of limitations defense turns on whether the actions of the debtor caused the creditor to refrain from bringing suit to collect the debt. *Ezell v. Williams*, 724 So. 2d 396, 397-98 (Miss. 1998) (citing *Izard v. Mikell*, 173 Miss. 770, 775, 163 So. 498, 499 (1935) (holding that doctrine of estoppel can be applied to bar a defendant from raising the statute of limitations as a defense where the defendant's actions lulled the plaintiff into not filing suit)). In *Ezell* the debtor never expressly requested the creditor's forbearance. Nevertheless, we affirmed the trial court's finding that there were sufficient expressions to induce the creditor to rely upon assurances that the debt would be paid such that the debtor should not be permitted to assert the statute of limitations. *Id.* at 398.

¶27. We have not, as far as this writer can tell, dealt with this issue in relationship to unliquidated claims. Nor have we applied the principle of estoppel to the statute of limitations embodied in the Mississippi Tort Claims Act. I see no reason, however, to make a distinction for either reason. Indeed, on two occasions, we have applied the doctrine of estoppel to hold that governmental bodies in tort claims acts cases were estopped by their actions from raising non-compliance with the pre-suit notice of claim requirement of Miss. Code Ann. § 11-46-11 (Supp. 1998). *Ferrer v. JacksonCounty Board of Supervisors*, No. 97-CA-01063-SCT, 1999 W L 250983, at *4 (Miss. Apr. 29, 1999); *Carr v. Town of Shubuta*, No. 96-CT-01266-SCT, 1999 W L 62772 at *5 (Miss. Feb. 11, 1999). We should apply this principle to the statute of limitations defense as well.

¶28. Other jurisdictions have held that "'[e]stoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay.'" *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1071 (7th Cir. 1978) (quoting *Bartlett v. United States*, 272 F.2d 291, 296 (10th Cir. 1959). *See also Cange v. Stotler & Co.,* 826 F.2d 581, 587-88 (7th Cir. 1987) (holding that a questions of fact concerning defendant's promise to pay a disputed claim will estop precluded summary judgment on whether the defendant was estop from claiming a statute of limitations defense).

¶29. The issue becomes a question for the trier of fact when there is evidence to support a finding that the plaintiff reasonably relied on the actions of the defendant to his detriment.

> In deciding whether there was sufficient evidence to submit the case sub judice to the jury on the issue of estoppel, we must assume the truth of the testimony presented by appellee. *Webb v. Johnson*, 195 Md. 587, 591, 74 A.2d 7 (1950). It is not our duty to decide whether the actions of appellant amounted to an estoppel. Rather, our duty is to determine whether there was sufficient evidence for the jury to have the opportunity to decide that question. *Patapsco and Back Rivers Railroad Co.*, supra, 208 Md. at 152, 117 A.2d 566. In making that determination we are guided by our decision in *Miller v. Michalek*, 13 Md.App. 16, 17-18, 281 A.2d 117, cert. granted, 263 Md. 717 (1971),

cert. dismissed, January 26, 1972, where we said, "If there is any competent evidence, however slight, leading to support the plaintiff's right to recover, the case should be submitted to the jury." (Citation omitted.)

*C&P Telephone Co. v. Scott*, 549 A.2d 425, 427 (Md. Ct. App. 1989) (reasonable to rely on assurances that her claim would be handled). *See also Ezell*, 724 So. 2d 396 (Miss. 1998) (creditor reasonably relied on debtor's representations that he would pay the debt); *United States v. Reliance Ins. Co.*, 436 F.2d 1366, 1370-71 (10th Cir. 1971) (subcontractor reasonably relied on surety's assurances that claim would be paid).

¶30. An Illinois court, when considering an insurance claim, held that:

In order for equitable estoppel to apply against enforcement of the statute of limitations, the conduct of the party against whom it is asserted must have lulled the other party into a false security, causing him to delay or waive the assertion of his rights. (*Vaughn v. Speaker* (1987), 156 Ill. App.3d 962, 109 Ill.Dec. 245, 509 N.E.2d 1084.) Some of the factors to be considered in determining whether an insurance company's conduct created a reasonable belief in the plaintiff that a claim would be paid include: (1) the insurer's concession of liability; (2) the insurer's conduct or statements by the insurer encouraging delay; (3) the insurer's payments during the negotiation period; (4) the plaintiff's awareness of the statute of limitations and retaining of counsel. (*Zaayer v. Axel* (1981), 102 Ill.App.3d 208, 57 Ill.Dec. 709, 429 N.E.2d 607.) If a material and disputed question of fact is raised regarding the issue of equitable estoppel, the trial judge should deny the motion to dismiss if it is an action of law and a jury demand has been timely filed by the opposing party. Ill.Rev.Stat.1987, ch. 110, par. 2-619(c).

*Peterson v. Schiek Motor Express*, 530 N.E.2d 1166, 1167 (Ill. Ct. App. 1988). In *Peterson* it was held to be a jury question as to whether estoppel was warranted due to the insurer's reassurances that the personal injury claim would be settled without litigation after plaintiff's release from medical care. *Vaughn v. Speaker*, 533 N.E.2d 885(Ill. 1988) (dismissal reversed because of contested issues of material fact on the statute of limitation/estoppel question); *See also Zaayer v. Axel*, 429 N.E.2d 607, 611 (Ill. 1981) (summary judgment for insurer reversed because of issues of fact as to whether insurer was estopped from relying on statute of limitations where insurer made settlement offers in regard to a personal injury claim, paid sums in settlement, and encouraged a settlement); *Friedman v. Friendly Ice Cream Co.*, 336 A.2d 493, 495 (N.J. 1975) (estoppel was a question for the jury where defendants admitted liability for the plaintiff's injuries but disagreed as to the settlement amount and defendants prolonged negotiations until statute of limitations ran).

¶31. In my view a fair-minded trier of fact could apply the criteria mentioned herein and reach a conclusion that estoppel is proper in this case. It follows that the matter should be put to a trial before the trier of fact, which, in a Tort Claims Act case, is the court sitting without a jury. Miss. Code Ann § 11-46-13(1) (Supp. 1998). Therefore, I would reverse the summary judgment granted below and remand this case for a trial.

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

McRAE, JUSTICE, DISSENTING:

¶32. I dissent. Stringer has presented sufficient facts to withstand summary judgment on whether the

Department of Public Safety's actions were such as to estop the Department from asserting a statute of limitations defense.

¶33. Through no fault of Stringer's, his car was rear-ended by a Department of Public Safety vehicle on June 20, 1994. Shortly thereafter, Stringer received a letter from claims representative Michael Green requesting Stringer to contact him regarding the accident. Stringer was asked to fill out a two-page "Claimant's Report of Accident" which Stringer returned to Green in late July, 1994.

¶34. Some three months after the accident, Stringer obtained partial success in his quest for justice when he was paid $2500 for property damage to his vehicle. Over the next year, the parties attempted to settle Stringer's personal injury claim. The insurance adjuster, Green, extended two offers of $8,000 and $10,000 to settle the case, both of which were turned down by Mr. Stringer on the grounds that the amounts were insufficient to cover even his lost wages. Per letter dated February 28, 1995, Green informed Stringer that he had not previously been aware that Stringer was claiming lost wages. Green, as the representative of the Mississippi Department of Public Safety, requested that Stringer complete a form authorizing the insurer to retrieve this information from Stringer's employer. Six months later the insurer finally obtained the lost wage information. On September 1, 1995, another claims representative wrote to Stringer informing him that the wage information had finally been received. This, of course, is after the one year statute of limitation had run; obviously the insurance company was still "investigating" the claim for the Department of Public Safety at this point.

¶35. Stringer filed suit on June 19, 1996. The Department of Public Safety, through the insurance company lawyers, moved to dismiss the case on several grounds including the statute of limitations. The trial court, treating the motion as one for summary judgment, properly held that the question of estoppel involved genuine issues of material fact and denied summary judgment. The Department of Public Safety thereafter requested an interlocutory appeal which was granted by this Court.

¶36. The majority opinion in this case rejects Stringer's argument that the Department of Public Safety and its insurance company should be equitably estopped from raising a statute of limitations defense despite the fact that the Department's insurer lulled Stringer into believing that his claim would be settled without resort to the judicial system. The majority does not hesitate to cite cases from other jurisdictions to hold that a defendant's conduct may estop the defendant from complaining of lack of notice. The majority is not so generous as to recognize the necessary corollary, i.e. that a defendant's actions may be such as to estop the defendant from claiming the protection of a statute of limitations.

¶37. For a better understanding of the Department's actions in this case, I set forth the following time line:

**June 20, 1994** Wreck occurs; liability clear; one year statute begins to run

**June 27, 1994** Insurer for MDPS sends Stringer a letter requesting Stringer to contact insurer

**July 6, 1994 (approx.)** Stringer agrees to give insurer a recorded statement

**July 16, 1994** Insurer for MDPS sends Stringer a **"claimant's report of accident"** form to be completed by Stringer.

**July 29, 1994** Stringer completes claim form and mails it back to insurer

**December 29, 1994** Stringer mails medical information to insurer

**January 13, 1995** Insurer mails letter to Stringer stating that insurer has requested medical records and will forward same to the Tort Claims Board

**February 22, 1995** Insurer makes Stringer an offer to settle the claim for $8,000.

**February 23, 1995** Stringer rejects offer. Stringer mails wage information to insurer

**February 28, 1995** Insurer mails letter to Stringer stating that it had not known of lost wage claim and asking Stringer to sign authorization for release of this information from his employer

**April 17, 1995** Stringer writes to insurer asking to be contacted concerning his claim.

**June 20, 1995** One-year statute of limitations

**September 1, 1995** Insurer writes to Stringer informing him that his wage information has been received and requesting Stringer to contact the insurer regarding settlement of his claim.

**June 19, 1996** Lawsuit filed

¶38. Ordinarily, the issue of whether a defendant is estopped from claiming a statute of limitations defense is a question of fact for the jury. ***Black v. Lexington Sch'l Dist. No. 2,*** 488 S.E.2d 327, 330 (S.C. 1997). *See also* ***Sweeney v. Preston***, 642 So.2d 332, 336 (Miss. 1994) (recognizing that in some instances, the issue of whether a suit is barred by a statute of limitations is a question of fact for a jury to determine); ***Smith v. Sanders***, 485 So.2d 1051, 1053 (Miss. 1986) (same).

¶39. In ***Jarvis v. City of Stillwater***, 732 P.2d 470 (Okla. 1987), the Oklahoma Supreme Court opined that a question of fact as to whether the defendant is estopped from raising a statute of limitations defense is raised when the plaintiff alleges one of the following:

1) that the defendant has made some assurances of settlement negotiations reasonably calculated to lull the plaintiff into a sense of security and delay action beyond the statutory period, or

2) an express and repeated admission of liability in conjunction with promises of payment, settlement or performance, or

3) any false, fraudulent or misleading conduct or some affirmative act of concealment to exclude suspicion and preclude inquiry which induces one to refrain from timely bringing an action.

*Jarvis*, 732 P.2d at 472.

¶40. A defendant may be estopped from asserting a statute of limitations defense if the defendant's conduct is such that he may found to have induced the delay. "The conduct may involve inducing the plaintiff either to believe that an amicable adjustment of the claim will be made without suit or to otherwise forbear exercising the right to sue." ***Republic Contracting Corp. v. South Carolina Dept. of Highways & Public Transportation***, 332 S.C. 197, 211, 503 S.E.2d 761, 768 (S.C. Ct.App. 1998). Offers of settlement combined with other conduct on the part of the defendant upon which the plaintiff reasonably relied may have the effect of tolling the statute of limitations. ***Molinar v. City of Carlsbad***, 735 P.2d 1134, 1137

(N.M.1987).

¶41. The majority cites these same cases in concluding that the Department of Public Safety was not estopped from asserting the one-year statute of limitations. I believe, however, that the instant case presents a question of fact as to whether the Department's actions constituted estoppel. Here, the insurer admitted liability and settled with Stringer on his property damage claim. This admission of liability, when coupled with the Department's dilatory efforts to resolve the claim, can be said to have lulled the claimant into a sense of security that his claim was being handled properly.

¶42. From the very beginning, the insurer acted as though it was just a matter of getting together all of the information concerning Stringer's claim before it would also pay Stringer's personal injury claim. Some eight months after the accident, on February 28, 1995, the insurer informed Stringer that it had not been aware of a lost wages claim. Stringer promptly filled out an authorization to release his wage information. Six months after that and **over two months after the one-year statute of limitations ran**, on September 1, 1995, the insurer wrote to Stringer that it had finally obtained his wage information. On the one hand, Stringer did all that the insurance company requested of him to settle his claim, and he did these things without delay. On the other hand, the insurance company acted with all deliberate indolence to delay resolution of Stringer's claim. Finally, when Stringer, aggrieved at the tortuous pace of the insurance company's handling of his claim, filed suit, the insurance company complained that it was too late, the statute of limitations had passed. This conduct on the part of the insurer should not be encouraged. I am afraid, however, that this Court has done nothing to stop it with its opinion today.

¶43. Pacifying an insured up until the time the statute of limitations has passed is considered an unfair claims settlement practice by the National Association of Insurance Commissioners. In 1976, the NAIC adopted model regulations designed to prevent inequitable activities such as these on the part of insurers. Section 8 of the "Unfair Claims Settlement Practices Model Regulation" sets forth "Standards for Prompt, Fair, and Equitable Settlements Applicable to All Insurers" and states in pertinent part

> (e) Insurers shall not continue negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney until the claimant's rights may be affected by a statute of limitations or a policy or contract time limit, without giving the claimant written notice that the time limit may be expiring and may affect the claimant's rights. Such notice will be given to first party claimants thirty days and to third party claimants sixty days before the date on which such time limit may expire.

1976 Proceedings of the National Association of Insurance Commissioners, Vol. II, p. 369.

¶44. In this case, the insurance company on behalf of the Department of Public Safety accepted liability for the accident, paid Stringer a sum for property damage, made two offers to settle the personal injury claim, and proceeded to act as though all that prevented Stringer from collecting for his personal injury claim was the need to assemble the pertinent information concerning medical treatment and lost wages. This should be sufficient to withstand summary judgment on the issue of whether the Department is estopped from asserting a statute of limitations defense.

¶45. Two of our recent Tort Claims Act decisions support my position here. In *Carr v. Town of Shubuta,* No. 96-CT-01266-SCT, 1999 WL 62772, at *5 (Miss. Feb. 11. 1999), we concluded that a town was estopped by its ongoing settlement discussions with the plaintiff from asserting that the plaintiff

gave inadequate presuit notice. Likewise, in *Ferrer v. Jackson County Board of Supervisors,* No. 97-CA-01063-SCT, 1999 WL 250983, at *8 (Miss. Apr. 29, 1999), we followed *Carr* and held that the county's payment of the plaintiff's property damage claim and its settlement offer on the remaining claims estopped the county raising the presuit notice requirement. In my view, *Carr* and *Ferrer* logically compel the conclusions here that Stringer at the very least raised a factual issue on the estoppel argument sufficient to defeat summary judgment.

¶46. Accordingly, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**