COLEMAN, Justice,
for the Court:
¶ 1. The present case is a Mississippi Tort Claims Act (MTCA) case riddled with confusion and miscommunication surrounding a residential building permit. In 2006, Dr. Terry Y. McMillin and his wife, Leslie Susan McMillin, purchased a new *950 home in Tupelo, Mississippi. Displeased ■with contractor Jamie Ewing’s failure to respond to their repair requests, plus their discovery of a document — a blue card— noting a failed home inspection and listing the name of a different contractor as the contractor responsible for their home’s construction, the McMillins began the process of, .unraveling just who was responsible for building their new home. Ultimately, the case stems from an error by the City of Tupelo’s Permit Manager Marilyn Vail in handling the withdrawal of one licensed contractor and mistakenly substituting the name of another licensed' contractor, when in actuality, a licensed contractor was not working on the home. The circuit court held a bench trial and awarded $9,319.23 in damages to repair the home and $105,894.39 in legal fees’ related to another case involving the construction but denied the McMillins’ request for attorneys’ fees in the instant case. The City appealed, and the McMillins cross-appealed. We conclude that the circuit court erred in finding that the City was not immune from liability; therefore, we reverse the' circuit court’s judgment and render judgment in favor of the City on the basis that it is immune from liability.

FACTUAL AND PROCEDURAL HISTORY

• ¶:2. A business partnership existed between Joey Guyton and Ewing, with the purpose of the partnership being construction of residential homes. As the licensed contractor in the partnership, Guyton oversaw Ewing’s construction activities for the partnership. On July 5, 2005, the City of Tupelo (City) issued Guyton, as the licensed contractor for the partnership, a permit to build a residence at 4848 Market Street in Tupelo, Mississippi. The partnership held other permits for other residential projects as well. Nine months after the City issued the permit, the partnership dissolved, and Guyton provided the City with a letter oh April 4,- 2006, requesting that he be released' from the permits issued to him under the partnership’s name. The City’s Permit 'Manager Marilyn. Vail requested Guyton provide something more formal than the letter, and on April 11, 2006, Guyton submitted a notarized letter to Vail' asking to be released from specific permits, including the residence’s permit.[1]
¶ 3. However, in the time between Guy-ton’s two letters, the City received a notarized letter signed by Lawrence Deas, a licensed contractor, and Ewing. The letter, in its entirety quoted herein, advised the City that “Deas has been hired by Harvester’s Square Developers, LLC, to temporarily oversee construction of all residences under construction until such time as another licensed contractor is found to take over said jobs.” The letter did not specifically list the permits that Deas would be overseeing.
¶4, Taking all three letters together, Vail mistakenly thought that Deas was now overseeing all of the permits listed in Guyton’s second letter. As a result, Vail issued a replacement blue card for the residence listing Deas as the licensed contractor. Ewing, continued construction on the residence, essentially without a licensed contractor overseeing his work.
¶ 5. The permit issue came to light only after the McMillins purchased the resi *951 dence on August 24, 2006. Following the purchase of the home, the McMillins created a punch list for the residence of items that Ewing was to repair or correct; however, according to the McMillins, Ewing would not respond to the McMillins’ punch list. Also after purchasing the residence, the McMillins discovered the replacement blue card Vail had prepared that listed Deas, not Ewing as they thought, as the licensed contractor on the residence. The replacement blue card also showed that the residence had failed an inspection just days prior to the McMillins’ purchase of the residence. According to the McMil-lins, they were unaware that the residence had failed an inspection when they closed.
¶ 6. Frustrated by Ewing’s failure to address their punch list, the McMillins contacted the State Board of Contractors to complain about Ewing, and they discovered that Ewing had not been licensed during the construction. Even more frustrated now, the McMillins sent a letter to Ewing, as the person responsible for construction; Deas, as the licensed contractor on the replacement blue card; and Guyton, as the original licensed contractor. The letter, demanded that Ewing return the purchase price to them. Guyton responded with a letter explaining that the original partnership with Ewing had dissolved, and he provided the McMillins with a copy of the notarized letter he had sent to Vail releasing the permits. •
¶ 7. Deas and the McMillins engaged in a heated phone conversation about the letter, leading to Deas sending the McMillins a letter denying his involvement with the residence and blaming a clerical error at the permit office for listing his name on the replacement blue card. Deas encouraged the McMillins to confirm the error with the permit office; however, Dr. McMillin testified that Vail would not answer his- questions about Deas’s involvement when he asked her.[2]
¶ 8. Then, in December 2006, the McMil-lins sued Ewing for breach of contract and-fraud, and they added claims for breach of fiduciary duty against two banks, all in the Lee County Chancery Court. Subsequently, the. McMillins voluntarily dismissed the banks, but the action against Ewing is still pending. Several months after filing the chancery court action, the McMillins served, a Notice of Claim on the City contending, that Vail negligently handled the permit issue, and her negligence resulted in the residence being constructed by an unlicensed contractor. The McMil-lins did not pursue an action against the City further until much later.
¶ 9, In January 2007, and unrelated to the chancery courf action, Vail placed a memo in the residence’s permit file. The memo, titled “Transfer of Contractor Responsibility,” acknowledged the partnership’s dissolution and explained that Ewing had six months from the dissolution to obtain his contractor’s license before he would be in violation of the law. Further, áCcording to the memo, Deas “agreed to take responsibility for [Ewing’s] projects until [Ewing] could obtain his license.” Ewing did pass the residential contractor’s test in September 20Ó6, and the State Board of Contractors issued Ewing’s license on October 27, 2006. The memo explained that Vail had transferred all previous permits to Ewing’s responsibility.
¶ 10. More than two years after initiating an action in the chancery court, the McMillins joined Deas as a defendant in the lawsuit in December 2008. Joining Deas appeared to be based on Vail’s memo explaining that Deas had agreed to take responsibility for Ewing’s projects. ■ Less *952 than one month after joining Deas as a defendant, the McMillins received an affidavit from Ewing confirming that Deas was not involved in the residence’s construction. In March 2010, Vail provided the McMillins with an affidavit explaining how she mistakenly came to believe that Deas was involved in the residence’s construction. Deas then requested the McMillins voluntarily dismiss him from the chancery court action based on Ewing’s and Vail’s affidavits; however, the McMil-lins would not agree to dismiss him from the action and instead added more claims against him. Deas filed his answer in the chancery court action, and he also filed a counterclaim against the McMillins for damages based on slander. Deas remained a defendant in the chancery court action for another twenty months until the chancery court granted summary judgment in his favor because the McMillins had failed to prove Deas’s connection to the residence. When granting summary judgment, the chancery court specifically noted that Deas’s name was associated with the residence only as a result of a clerical mistake.
¶ 11. The present case began on March 17, 2011, when the McMillins submitted a second Notice of Claim to the City, again based on Vail’s negligent handling of the permits and permit file. The Lee County Circuit Court held a bench trial, and it heard two days of testimony and evidence. The McMillins and the City submitted separate, proposed findings of fact and conclusions of law at the trial court’s request, and the trial court ultimately adopted an overwhelming majority of the McMillins’ proposed findings. The circuit court found that Vail had a duty to:
(1) ensure that a licensed contractor] was working on the [residence] for the entirety of the construction; (2) on the withdrawal of the Guyton license, stop construction; (3) prevent construction from resuming until such time as a licensed contractor agreed to be responsible for the construction; (4) properly process the Guyton withdrawal; (5) stop construction when the [original] permit expired; and (6) refrain from placing in the file misleading untruthful papers.
The circuit court explained that Vail’s actions or inactions in maintaining the permit file were deemed arbitrary and capricious; thus, the City could not be immune from liability. Further, as a result of Vail’s error, the City negligently and wrongfully allowed construction on the residence by an unlicensed contractor. The circuit court awarded the McMillins $9,319.23 in damages for repairs to the' residence and more than $105,000 in legal fees incurred by the McMillins while pursuing the chancery court action against Deas. The McMillins did not receive any attorneys’ fees in connection with the present suit against the City. Also, the circuit court did not award the McMillins the damages they requested related to the down payment, all mortgage payments made, and other costs associated with maintaining the residence while on the market.
¶ 12. The City appealed the circuit court’s decision, and it raises the following issues for appellate review:
I. Did [the McMillins] present evidence sufficient to support a verdict awarding $9,319.23 for repair work?
II. Even if there had been proof of repairs for defective construction occurring after April 11, 2006, would Tupelo be immune from liability under [Mississippi] Code [Section] 11 — 46—9(l)(h)?
III. Was there any proof that Vail violated [Mississippi] Code [Section] 73-59-17?
*953 IV. Did Vail’s actions or inaction after [the McMillins’] purchase of the residence breach a duty owed [the McMillins] from which [the City] is not immune and that proximately caused them to incur attorneyfs’] fees in litigation with Deas?
V. Even if an action or inaction by Vail after [the McMillins’] purchase of the residence breached a duty that proximately caused [the McMillins] to sue Deas, did the trial court err in awarding attorney[s’] fees totaling $105,894.39?
VI. Notwithstanding all of the foregoing, is this action barred by appli- • cable statutes of limitation?
¶ 13. Also aggrieved, the McMillins filed a cross-appeal on the issue of attorneys’ fees, and they present the following issues for appellate review:
I. [The McMillins] are entitled to attorney[s’] fees in the current case due to the gross negligence of [the City/ Vail] found in the punitive damages statute.
II. [The McMillins] are entitled to attorney[s’] fees in’the current'case due to [the City’s/Vail’s] denial of liability in [the McMillins’] request for admissions.
III. , [The McMillins] are entitled to attorney[s’] fees in the current case as these fees are the natural consequence of the actions and omissions of [the City/Vail] and they should be assessed with them under Veasley and Essinger case law.
IV. [The McMillins] are entitled to post[-]judgment interest at a rate to be set by the [trial] court. ■
For the purposes of clarity and brevity, we will combine and rearrange. issues where necessary.

STANDARD OF REVIEW

¶ 14. “Immunity is a question of law[,]” which receives de novo review, and is the basis for our review of the disposi-tive issue in today’s case. ' However, the “findings of fact by a circuit court judge, sitting without a jury, will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence.” City of Laurel v. Williams, 21 So.3d 1170, 1174 (¶ 15) (Miss.2009) (citations omitted).

DISCUSSION

I. The City’s Appeal
¶ 15. The City contends that it is immune from liability pursuant to Mississippi Code Section ll-46-9(l)(h). Additionally, the City argues that the McMil-lins presented no proof that Vail violated Mississippi Code Section 73-59-17. We agree.
¶ 16. The circuit court cited Mississippi Code Section 73-59-17 (Rev.2012) to provide the “statutory duty” the City has to “ensure that all builders of residential property within the [c]ity limits be licensed.” Section 73-59-17 (emphasis added) provides:
The building official, or other authority charged with the duty of issuing building or similar permits, of any municipality or county, shall refuse to issue a 'permit for any undertaking which would classify the applicant as a residential builder or remodeler under this chapter unless the applicant has furnished evidence that he is either licensed as required by this chapter or exempt from the requirements of this chapter. The building official, or other authority charged with the duty of issuing building or similar permits, shall also report to the board the name and address of any person who, in his opinion, has *954 violated this chapter by accepting, or contracting to accomplish,; work which would classify the person as a residential builder or remodeler under this chapter without a license or acknowledgement [sic]. . .
The circuit- court found that the City’s action or inaction, through. Vail, was arbitrary and capricious when it allowed Ewing, who Vail knew was not licensed and did not have a valid permit, to continue work on the residence.
¶ 17. We cannot determine how Section 73-59-17 creates a duty which the City violated. The statute requires that the person responsible for issuing permits “shall refuse to issue a permit” unless the applicant is licensed. When the permit for the residence was first issued, the applicant Guyton was licensed; therefore, the City properly issued the license under the statute. We cannot find authority, nor has any been provided to. us, otherwise explaining what should happen when a valid permit already has been issued, but the licensed applicant pulls his license for the permit. We do not read the statute to cover such a situation. Therefore, we cannot discern a statutory basis to support any duty to the McMillins that Vail and the City did not satisfy,
¶18. Furthermore, we hold that the circuit court erred in finding that City was not.immune because it acted arbitrarily and capriciously. “Immunity is a question of law[,]” which receives de novo review. City of Laurel v. Williams, 21 So.3d 1170, 1174 (¶ 15) (citations omitted). At issue in the present case is Section; 11-46-9(h)(h), which provides:
A governmental entity and its employees acting within the course and scope of their employment or duties shall- not be liable-for any claim:
Arising out of the; issuance, denial, suspense or revocation of, or the failure or refusal to issue, deny, suspend or revoke any ... permit ... where the governmental entity or its employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked unless such issuance, denial, suspension or revocation, or failure or refusal thereof, is of a malicious or arbitrary and capricious nature[.]
¶ 19. According to the circuit court, the City was entitled to “qualified sovereign immunity by Section ll-46-9(l)(h).” Howfever, the City’s actions of “allowing Ewing to continue to perform work on the [residence] when -they knew that he was not licensed and without a valid [p]ermit rises to the level of arbitrary and capricious.” Further,' Vail did not notify the Board. of Contractors to report Ewing. The circuit court also found that Vail had admitted that Guyton had withdrawn the only valid license, and that Deas never had agreed to take responsibility for the residence’s construction. There is no more explanation of how the City’s actions were arbitrary and capricious.
¶2,0. The Court has addressed the terms'“arbitrary and capricious” in connection with Section 11 — 46—D(l)(h) in Lowe v. Lowndes County Building ' Inspection Department, 760 So,2d 711, 714 (¶ 12) (Miss.2000) (quoting- Mississippi Department of Environmental Quality v. Weems, 653 So.2d 266 (Miss.1995)):
An administrative act is arbitrary and capricious" if the agency “entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the ageiicy or is so implausible that it could not be ascribed to a difference iff-view or the product of any agency expertise.” In addition, the failure of an agency to abide by its rules is per se arbitrary and capricious as is *955 the failure of an administrative body to conform to prior procedure without adequate explanation for the change.
As the circuit court pointed out, Vail’s inclusion of Deas’s name on the replacement blue card was a mistake. The chancery court also recognized that the City’s inclusion of Deas was the result of a clerical mistake. Vail’s inclusion of Deas’s name was a genuine mistake that does not rise to the level of arbitrary and capricious behavior. As several witnesses testified, the City does not have a policy or procedure for the situation of having a licensed contractor release his permits and withdraw his license. Therefore, Vail was faced with an unusual situation for which she had no precedent to follow. We now know that Vail should have read the letter from Guyton and the letter from Deas and Ewing more closely to realize the letters did not cover the same properties, but we cannot see how making.such a mistake is considered arbitrary and capricious.
¶21. The circuit court erred also in finding that the City knew Ewing was not licensed and did not have a valid permit while construction was ongoing, when the evidence is that at no point until well after construction was completed did it come to light that there was not a licensed contractor on the residence. In Lowe, the Court reversed the circuit court’s finding of immunity under Section ll-46-9(l)(h) and subsequent dismissal based on the fact that the plaintiffs allegations, which must be taken as true in considering a motion to dismiss, that the Lowndes County Building Inspection Department knew Donna Kay Lynn was not a licensed contractor but still issued a. permit. Lowe, 760 So.2d at 714 (¶¶ 8-17). The present case is distinguishable because the undisputed proof is that Vail, though aware that Ewing was unlicensed, did not know that the permit lacked a licensed contractor at any time until after the construction was completed, since she thought Deas took over responsibility for the permit. Further, Vail did not report Ewing to the Board of Contractors because, in her mind, Ewing’s construction projects were being overseen by a licensed contractor, and then Ewing became ■ licensed, so there was no need to report Ewing. The bases for the circuit court’s finding that the City whs not immune because it acted arbitrarily and capriciously are not based solidly in the evidence presented at trial.
¶ 22. Therefore, we hold that the City was-immune from liability, and-the circuit court erred in finding otherwise.
II. Statute of Limitations
¶23. The City also claims that the MTCA’s one-year statute of limitations bars the McMillins’ complaint. We agree. The McMillins filed their initial Notice of Claim in August 2007; they did not file suit. Their second Notice of Claim was filed on March 17, 2011, with suit then filed on Octobe'r 13, 2011. Mississippi Code Section 11-46-11(3) (a) provides, in pertinent part, that:
All actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after, except that filing a notice of claim within the required one-year period will toll the statute of limitations for ninety-five (95) days from the date the, chief executive officer of the state entity or the chief executive officer or other statutorily designated official of a political subdivision receives the notice of claim.
¶ 24. When presented with the argument at trial, the circuit court found that the statute of limitations had run, that the City did not waive the statute of limita *956 tions defense, but that the City was equitably estopped from raising the statute of limitations defense “due to the actions of the City employees, specifically Ms. Vail[,]” that caused the McMillins such difficulty in ascertaining who was the residence’s contractor. “Concerning the application of equitable estoppel, ‘[the] issue becomes a question for the trier of fact when there is evidence to support a finding that the plaintiff reasonably relied on the actions of the defendant to his detriment.’” Trosclair v. Miss. Dep’t of Transp., 757 So.2d 178, 181 (¶13) (Miss. 2000) (quoting Miss. Dep’t of Pub. Safety v. Stringer, 748 So.2d 662, 668 (¶ 29) (Miss. 1999) (Banks, J., dissenting)).
¶25. “With the replacement of strict compliance with that' of substantial compliance, the Court opened the door for the application of .equitable estoppel in cases arising under the [MTCA,]” and depending on the facts of the case, equitable estoppel may be applied to the.notice of claim provision and the MTCA’s statute of limitations provision. Trosclair, 757 So.2d at 181 (¶ 10). “Equitable estoppel is generally defined as ‘the principle by which a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in' such a way that injury would be suffered if such denial or contrary assertion was allowed.’ ” Kimball Glassco Residential Ctr., Inc. v. Shanks, 64 So.3d 941, 947 (¶19) (Miss. 2011) (quoting Simmons Housing, Inc. v. Shelton, 36 So.3d 1283, 1287 (¶ 15) (Miss. 2010)). Equitable estoppel is an extraordinary remedy and should be applied with caution. Id.
¶ 26. For the doctrine of equitable estoppel to apply to a statute of limitations, “[i]nequitable or fraudulent conduct must be established^]” Shanks, 64 So.3d at 947 (¶ 19) (quoting Trosclair, 757 So.2d at 181 (¶ 11)). In Townes v. Rusty Ellis Builder, Inc., 98 So.3d 1046, 1055 (¶26) (Miss.2012), the Court explained that it would not “prevent a time bar where good-faith settlement negotiations are the only evidence submitted by the plaintiff, Rather, the plaintiff must present proof of inequitable conduct by the defendants.” Further, “the plaintiff must show by a preponderance of the evidence that ‘(1) it was induced by the conduct of the defendant not to file its complaint sooner, (2) resulting in [the plaintiffs] claim being barred by the applicable limitations, and (3) [the defendant] knew or had reason to know that such consequences would follow.” Id. (citations omitted). Vail’s listing of Deas as the: residence’s licensed contractor and her subsequent actions, including the memos placed in the permit file, were the result of a mistaken belief. There is no proof in the record, much less proof by a preponderance of the evidence, that the City or Vail “knew or had reason to know” that its actions or inactions would result in the McMillins’ claims or suits being barred by a statute of limitations.
¶27. We hold that the circuit court correctly found that thé City did not waive its statute of limitations defense and that the statute of limitations had, in fact, run. Even though there is testimony that the McMillins delayed filing their suit based on Vail’s 2007 memo, there is no dispute that the McMillins knew confusion surrounded the permit, as evidenced by their first Notice of Claim, which was timely. The McMillins elected not to proceed on that Notice of Claim, and that was their decision. Moreover, the circuit court erred in applying the doctrine of equitable estoppel. Thus, the McMillins’ claims were barred by the statute of limitations.
III. Damages Awarded to the McMil-lins Based on Deas Lawsuit
¶ 28. Because the City was immune from liability and the statute of limitations *957 barred the McMillins’ case, the circuit court erred in awarding the McMillins more than $105,000 in damages for the legal fees associated with the McMillins’ suit against Deas based on their “reasonable reliance upon the contents of the Permit File and communication with the City of Tupelo resulting in the pursuit of Deas.” We reverse the circuit court’s award of all damages in the present case, including the attorneys’ fees.
IV. The McMillins’ Cross-Appeal
¶29. The McMillins’ cross-appeal centers on their request for attorneys’ fees in the present case, which the circuit court denied as having “no authority in statute or case law[.]” Based on the application of the statute of limitations and the City’s immunity from liability, it follows that analysis of the McMillins’ cross-appeal is unnecessary. The judgment of the circuit court on the McMillins’ cross-appeal is affirmed.

CONCLUSION

¶ 30. The present case involves a clerical mistake and numerous subsequent mis-communications that snowballed into what is now before us. Ultimately, the McMil-lins’ claims were barred by the statute of limitations and the City is immune from liability. Therefore, the circuit court erred in finding that the City was not immune and allowing the case to proceed. The resulting damages awarded to the McMil-lins also were in error based on the statute of limitations and the City’s immunity. Finally, the circuit court correctly found that the McMillins’ claim for legal fees in the present case is without merit for the same reasons as stated above.
¶ 31. ON DIRECT APPEAL: REVERSED AND RENDERED. ON CROSS-APPEAL: AFFIRMED.
WALLER, C.J., DICKINSON, P.J., AND BEAM, J., CONCUR. RANDOLPH, P.J., LAMAR AND MAXWELL, JJ., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.

. More specifically, the letter said: “I am withdrawing the use of my general contractor’s license for the building permits listed below. I release the listed permits for- the Harvester’s Square developer to use another licehsed general contractor to finish the projects.’’ The letter then listed the residence, another address, and nine lots/addresses asso•ciated with the Harvester's Square development. ■

. Vail denied that Dr. McMillin had asked her any questions about Deas's involvement,