# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01378-SCT

*CITY OF TUPELO, MISSISSIPPI*

*v.*

*TERRY Y. McMILLIN, M.D. AND LESLIE SUSAN McMILLIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2014 |
| TRIAL JUDGE: | HON. JAMES SETH ANDREW POUNDS |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MARTHA BOST STEGALL |
| | JOHN S. HILL |
| ATTORNEYS FOR APPELLEES: | BRADLEY TRUETT GOLMON |
| | STACEY WOODRUFF GOLMON |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | ON DIRECT APPEAL: REVERSED AND RENDERED. ON CROSS-APPEAL: AFFIRMED - 04/14/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. The present case is a Mississippi Tort Claims Act (MTCA) case riddled with confusion and miscommunication surrounding a residential building permit. In 2006, Dr. Terry Y. McMillin and his wife, Leslie Susan McMillin, purchased a new home in Tupelo, Mississippi. Displeased with contractor Jamie Ewing's failure to respond to their repair requests, plus their discovery of a document – a blue card – noting a failed home inspection

and listing the name of a different contractor as the contractor responsible for their home's construction, the McMillins began the process of unraveling just who was responsible for building their new home. Ultimately, the case stems from an error by the City of Tupelo's Permit Manager Marilyn Vail in handling the withdrawal of one licensed contractor and mistakenly substituting the name of another licensed contractor, when in actuality, a licensed contractor was not working on the home. The circuit court held a bench trial and awarded $9,319.23 in damages to repair the home and $105,894.39 in legal fees related to another case involving the construction but denied the McMillins' request for attorneys' fees in the instant case. The City appealed, and the McMillins cross-appealed. We conclude that the circuit court erred in finding that the City was not immune from liability; therefore, we reverse the circuit court's judgment and render judgment in favor of the City on the basis that it is immune from liability.

### FACTUAL AND PROCEDURAL HISTORY

¶2. A business partnership existed between Joey Guyton and Ewing, with the purpose of the partnership being construction of residential homes. As the licensed contractor in the partnership, Guyton oversaw Ewing's construction activities for the partnership. On July 5, 2005, the City of Tupelo (City) issued Guyton, as the licensed contractor for the partnership, a permit to build a residence at 4848 Market Street in Tupelo, Mississippi. The partnership held other permits for other residential projects as well. Nine months after the City issued the permit, the partnership dissolved, and Guyton provided the City with a letter on April 4, 2006, requesting that he be released from the permits issued to him under the partnership's

2

name. The City's Permit Manager Marilyn Vail requested Guyton provide something more formal than the letter, and on April 11, 2006, Guyton submitted a notarized letter to Vail asking to be released from specific permits, including the residence's permit.[1]

¶3.     However, in the time between Guyton's two letters, the City received a notarized letter signed by Lawrence Deas, a licensed contractor, and Ewing. The letter, in its entirety quoted herein, advised the City that "Deas has been hired by Harvester's Square Developers, LLC, to temporarily oversee construction of all residences under construction until such time as another licensed contractor is found to take over said jobs." The letter did not specifically list the permits that Deas would be overseeing.

¶4.     Taking all three letters together, Vail mistakenly thought that Deas was now overseeing *all* of the permits listed in Guyton's second letter. As a result, Vail issued a replacement blue card for the residence listing Deas as the licensed contractor. Ewing continued construction on the residence, essentially without a licensed contractor overseeing his work.

¶5.     The permit issue came to light only after the McMillins purchased the residence on August 24, 2006. Following the purchase of the home, the McMillins created a punch list for the residence of items that Ewing was to repair or correct; however, according to the McMillins, Ewing would not respond to the McMillins' punch list. Also after purchasing

---

[1] More specifically, the letter said: "I am withdrawing the use of my general contractor's license for the building permits listed below. I release the listed permits for the Harvester's Square developer to use another licensed general contractor to finish the projects." The letter then listed the residence, another address, and nine lots/addresses associated with the Harvester's Square development.

3

the residence, the McMillins discovered the replacement blue card Vail had prepared that listed Deas, not Ewing as they thought, as the licensed contractor on the residence. The replacement blue card also showed that the residence had failed an inspection just days prior to the McMillins' purchase of the residence. According to the McMillins, they were unaware that the residence had failed an inspection when they closed.

¶6. Frustrated by Ewing's failure to address their punch list, the McMillins contacted the State Board of Contractors to complain about Ewing, and they discovered that Ewing had not been licensed during the construction. Even more frustrated now, the McMillins sent a letter to Ewing, as the person responsible for construction; Deas, as the licensed contractor on the replacement blue card; and Guyton, as the original licensed contractor. The letter demanded that Ewing return the purchase price to them. Guyton responded with a letter explaining that the original partnership with Ewing had dissolved, and he provided the McMillins with a copy of the notarized letter he had sent to Vail releasing the permits.

¶7. Deas and the McMillins engaged in a heated phone conversation about the letter, leading to Deas sending the McMillins a letter denying his involvement with the residence and blaming a clerical error at the permit office for listing his name on the replacement blue card. Deas encouraged the McMillins to confirm the error with the permit office; however, Dr. McMillin testified that Vail would not answer his questions about Deas's involvement when he asked her.[2]

_____

[2] Vail denied that Dr. McMillin had asked her any questions about Deas's involvement.

4

¶8. Then, in December 2006, the McMillins sued Ewing for breach of contract and fraud, and they added claims for breach of fiduciary duty against two banks, all in the Lee County Chancery Court. Subsequently, the McMillins voluntarily dismissed the banks, but the action against Ewing is still pending. Several months after filing the chancery court action, the McMillins served a Notice of Claim on the City contending that Vail negligently handled the permit issue, and her negligence resulted in the residence being constructed by an unlicensed contractor. The McMillins did not pursue an action against the City further until much later.

¶9. In January 2007, and unrelated to the chancery court action, Vail placed a memo in the residence's permit file. The memo, titled "Transfer of Contractor Responsibility," acknowledged the partnership's dissolution and explained that Ewing had six months from the dissolution to obtain his contractor's license before he would be in violation of the law. Further, according to the memo, Deas "agreed to take responsibility for [Ewing's] projects until [Ewing] could obtain his license." Ewing did pass the residential contractor's test in September 2006, and the State Board of Contractors issued Ewing's license on October 27, 2006. The memo explained that Vail had transferred all previous permits to Ewing's responsibility.

¶10. More than two years after initiating an action in the chancery court, the McMillins joined Deas as a defendant in the lawsuit in December 2008. Joining Deas appeared to be based on Vail's memo explaining that Deas had agreed to take responsibility for Ewing's projects. Less than one month after joining Deas as a defendant, the McMillins received an affidavit from Ewing confirming that Deas was not involved in the residence's construction.

5

In March 2010, Vail provided the McMillins with an affidavit explaining how she mistakenly came to believe that Deas was involved in the residence's construction. Deas then requested the McMillins voluntarily dismiss him from the chancery court action based on Ewing's and Vail's affidavits; however, the McMillins would not agree to dismiss him from the action and instead added more claims against him. Deas filed his answer in the chancery court action, and he also filed a counterclaim against the McMillins for damages based on slander. Deas remained a defendant in the chancery court action for another twenty months until the chancery court granted summary judgment in his favor because the McMillins had failed to prove Deas's connection to the residence. When granting summary judgment, the chancery court specifically noted that Deas's name was associated with the residence only as a result of a clerical mistake.

¶11. The present case began on March 17, 2011, when the McMillins submitted a second Notice of Claim to the City, again based on Vail's negligent handling of the permits and permit file. The Lee County Circuit Court held a bench trial, and it heard two days of testimony and evidence. The McMillins and the City submitted separate, proposed findings of fact and conclusions of law at the trial court's request, and the trial court ultimately adopted an overwhelming majority of the McMillins' proposed findings. The circuit court found that Vail had a duty to:

> (1) ensure that a licensed contract[or] was working on the [residence] for the entirety of the construction; (2) on the withdrawal of the Guyton license, stop construction; (3) prevent construction from resuming until such time as a licensed contractor agreed to be responsible for the construction; (4) properly process the Guyton withdrawal; (5) stop construction when the [original]

6

permit expired; and (6) refrain from placing in the file misleading untruthful papers.

The circuit court explained that Vail's actions or inactions in maintaining the permit file were deemed arbitrary and capricious; thus, the City could not be immune from liability. Further, as a result of Vail's error, the City negligently and wrongfully allowed construction on the residence by an unlicensed contractor. The circuit court awarded the McMillins $9,319.23 in damages for repairs to the residence and more than $105,000 in legal fees incurred by the McMillins while pursuing the chancery court action against Deas. The McMillins did not receive any attorneys' fees in connection with the present suit against the City. Also, the circuit court did not award the McMillins the damages they requested related to the down payment, all mortgage payments made, and other costs associated with maintaining the residence while on the market.

¶12. The City appealed the circuit court's decision, and it raises the following issues for appellate review:

    I.     Did [the McMillins] present evidence sufficient to support a verdict awarding $9,319.23 for repair work?

    II.    Even if there had been proof of repairs for defective construction occurring after April 11, 2006, would Tupelo be immune from liability under [Mississippi] Code [Section] 11-46-9(1)(h)?

    III.   Was there any proof that Vail violated [Mississippi] Code [Section] 73-59-17?

    IV.   Did Vail's actions or inaction after [the McMillins'] purchase of the residence breach a duty owed [the McMillins] from which [the City] is not immune and that proximately caused them to incur attorney[s'] fees in litigation with Deas?

V. Even if an action or inaction by Vail after [the McMillins'] purchase of the residence breached a duty that proximately caused [the McMillins] to sue Deas, did the trial court err in awarding attorney[s'] fees totaling $105,894.39?

VI. Notwithstanding all of the foregoing, is this action barred by applicable statutes of limitation?

¶13. Also aggrieved, the McMillins filed a cross-appeal on the issue of attorneys' fees, and they present the following issues for appellate review:

I. [The McMillins] are entitled to attorney[s'] fees in the current case due to the gross negligence of [the City/Vail] found in the punitive damages statute.

II. [The McMillins] are entitled to attorney[s'] fees in the current case due to [the City's/Vail's] denial of liability in [the McMillins'] request for admissions.

III. [The McMillins] are entitled to attorney[s'] fees in the current case as these fees are the natural consequence of the actions and omissions of [the City/Vail] and they should be assessed with them under *Veasley* and *Essinger* case law.

IV. [The McMillins] are entitled to post[-]judgment interest at a rate to be set by the [trial] court.

For the purposes of clarity and brevity, we will combine and rearrange issues where necessary.

**STANDARD OF REVIEW**

¶14. "Immunity is a question of law[,]" which receives de novo review, and is the basis for our review of the dispositive issue in today's case. However, the "findings of fact by a circuit court judge, sitting without a jury, will not be reversed on appeal where they are

8

supported by substantial, credible, and reasonable evidence." ***City of Laurel v. Williams***, 21 So. 3d 1170, 1174 (¶15) (citations omitted).

## DISCUSSION

### I. The City's Appeal

¶15. The City contends that it is immune from liability pursuant to Mississippi Code Section 11-46-9(1)(h). Additionally, the City argues that the McMillins presented no proof that Vail violated Mississippi Code Section 73-59-17. We agree.

¶16. The circuit court cited Mississippi Code Section 73-59-17 (Rev. 2012) to provide the "statutory duty" the City has to "ensure that all builders of residential property within the [c]ity limits be licensed." Section 73-59-17 (emphasis added) provides:

> The building official, or other authority charged with the duty of issuing building or similar permits, of any municipality or county, *shall refuse to issue a permit* for any undertaking which would classify the applicant as a residential builder or remodeler under this chapter unless the applicant has furnished evidence that he is either licensed as required by this chapter or exempt from the requirements of this chapter. The building official, or other authority charged with the duty of issuing building or similar permits, shall also report to the board the name and address of any person who, *in his opinion,* has violated this chapter by accepting, or contracting to accomplish, work which would classify the person as a residential builder or remodeler under this chapter without a license or acknowledgement [sic].

The circuit court found that the City's action or inaction, through Vail, was arbitrary and capricious when it allowed Ewing, who Vail knew was not licensed and did not have a valid permit, to continue work on the residence.

¶17. We cannot determine how Section 73-59-17 creates a duty which the City violated. The statute requires that the person responsible for issuing permits "shall *refuse to issue* a

9

permit" unless the applicant is licensed. When the permit for the residence was first issued, the applicant Guyton was licensed; therefore, the City properly issued the license under the statute. We cannot find authority, nor has any been provided to us, otherwise explaining what should happen when a valid permit already has been issued, but the licensed applicant pulls his license for the permit. We do not read the statute to cover such a situation. Therefore, we cannot discern a statutory basis to support *any* duty to the McMillins that Vail and the City did not satisfy.

¶18. Furthermore, we hold that the circuit court erred in finding that City was not immune because it acted arbitrarily and capriciously. "Immunity is a question of law[,]" which receives de novo review. *City of Laurel v. Williams*, 21 So. 3d 1170, 1174 (¶15) (citations omitted). At issue in the present case is Section 11-46-9(1)(h), which provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
>> Arising out of the issuance, denial, suspense or revocation of, or the failure or refusal to issue, deny, suspend or revoke any . . . permit . . . where the governmental entity or its employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked unless such issuance, denial, suspension or revocation, or failure or refusal thereof, is of a malicious or arbitrary and capricious nature[.]

¶19. According to the circuit court, the City was entitled to "qualified sovereign immunity by Section 11-46-9(1)(h)." However, the City's actions of "allowing Ewing to continue to perform work on the [residence] when they knew that he was not licensed and without a valid [p]ermit rises to the level of arbitrary and capricious." Further, Vail did not notify the Board of Contractors to report Ewing. The circuit court also found that Vail had admitted that

10

Guyton had withdrawn the only valid license, and that Deas never had agreed to take responsibility for the residence's construction. There is no more explanation of how the City's actions were arbitrary and capricious.

¶20. The Court has addressed the terms "arbitrary and capricious" in connection with Section 11-46-9(1)(h) in *Lowe v. Lowndes County Building Inspection Department*, 760 So. 2d 711, 714 (¶12) (Miss. 2000) (quoting *Mississippi Department of Environmental Quality v. Weems*, 653 So. 2d 266 (Miss. 1995)):

> An administrative act is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of any agency expertise." In addition, the failure of an agency to abide by its rules is per se arbitrary and capricious as is the failure of an administrative body to conform to prior procedure without adequate explanation for the change.

As the circuit court pointed out, Vail's inclusion of Deas's name on the replacement blue card was a mistake. The chancery court also recognized that the City's inclusion of Deas was the result of a clerical mistake. Vail's inclusion of Deas's name was a genuine mistake that does not rise to the level of arbitrary and capricious behavior. As several witnesses testified, the City does not have a policy or procedure for the situation of having a licensed contractor release his permits and withdraw his license. Therefore, Vail was faced with an unusual situation for which she had no precedent to follow. We now know that Vail should have read the letter from Guyton and the letter from Deas and Ewing more closely to realize the letters did not cover the same properties, but we cannot see how making such a mistake is considered arbitrary and capricious.

11

¶21. The circuit court erred also in finding that the City *knew* Ewing was not licensed and did not have a valid permit while construction was ongoing, when the evidence is that at no point until well *after* construction was completed did it come to light that there was not a licensed contractor on the residence. In **Lowe**, the Court reversed the circuit court's finding of immunity under Section 11-46-9(1)(h) and subsequent dismissal based on the fact that the plaintiff's allegations, which must be taken as true in considering a motion to dismiss, that the Lowndes County Building Inspection Department knew Donna Kay Lynn was not a licensed contractor but still issued a permit. **Lowe**, 760 So. 2d at 714 (¶¶8-17). The present case is distinguishable because the undisputed proof is that Vail, though aware that Ewing was unlicensed, did not know that the permit lacked a licensed contractor at any time until after the construction was completed, since she thought Deas took over responsibility for the permit. Further, Vail did not report Ewing to the Board of Contractors because, in her mind, Ewing's construction projects were being overseen by a licensed contractor, and then Ewing became licensed, so there was no need to report Ewing. The bases for the circuit court's finding that the City was not immune because it acted arbitrarily and capriciously are not based solidly in the evidence presented at trial.

¶22. Therefore, we hold that the City was immune from liability, and the circuit court erred in finding otherwise.

## II. Statute of Limitations

¶23. The City also claims that the MTCA's one-year statute of limitations bars the McMillins' complaint. We agree. The McMillins filed their initial Notice of Claim in

August 2007; they did not file suit. Their second Notice of Claim was filed on March 17, 2011, with suit then filed on October 13, 2011. Mississippi Code Section 11-46-11(3)(a) provides, in pertinent part, that:

> All actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after, except that filing a notice of claim within the required one-year period will toll the statute of limitations for ninety-five (95) days from the date the chief executive officer of the state entity or the chief executive officer or other statutorily designated official of a political subdivision receives the notice of claim.

¶24. When presented with the argument at trial, the circuit court found that the statute of limitations had run, that the City did not waive the statute of limitations defense, but that the City was equitably estopped from raising the statute of limitations defense "due to the actions of the City employees, specifically Ms. Vail[,]" that caused the McMillins such difficulty in ascertaining who was the residence's contractor. "Concerning the application of equitable estoppel, '[the] issue becomes a question for the trier of fact when there is evidence to support a finding that the plaintiff reasonably relied on the actions of the defendant to his detriment.'" *Trosclair v. Miss. Dep't of Transp.*, 757 So. 2d 178, 181 (¶13) (Miss. 2000) (quoting *Miss. Dep't of Pub. Safety v. Stringer*, 748 So. 2d 662, 668 (¶29) (Miss. 1999) (Banks, J., dissenting)).

¶25. "With the replacement of strict compliance with that of substantial compliance, the Court opened the door for the application of equitable estoppel in cases arising under the [MTCA,]" and depending on the facts of the case, equitable estoppel may be applied to the notice of claim provision and the MTCA's statute of limitations provision. *Trosclair*, 757

So. 2d at 181 (¶10). "Equitable estoppel is generally defined as 'the principle by which a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed.'" ***Kimball Glassco Residential Ctr., Inc. v. Shanks***, 64 So. 3d 941, 947 (¶19) (Miss. 2011) (quoting ***Simmons Housing, Inc. v. Shelton***, 36 So. 3d 1283, 1287 (¶15) (Miss. 2010)). Equitable estoppel is an extraordinary remedy and should be applied with caution. ***Id.***

¶26.    For the doctrine of equitable estoppel to apply to a statute of limitations, "[i]nequitable or fraudulent conduct must be established[.]" ***Shanks***, 64 So. 3d at 947 (¶19) (quoting ***Trosclair***, 757 So. 2d at 181 (¶11)). In ***Townes v. Rusty Ellis Builder, Inc.***, 98 So. 3d 1046, 1055 (¶26) (Miss. 2012), the Court explained that it would not "prevent a time bar where good-faith settlement negotiations are the only evidence submitted by the plaintiff. Rather, the plaintiff must present proof of inequitable conduct by the defendants." Further, "the plaintiff must show by a preponderance of the evidence that '(1) it was induced by the conduct of the defendant not to file its complaint sooner, (2) resulting in [the plaintiff's] claim being barred by the applicable limitations, and (3) [the defendant] knew or had reason to know that such consequences would follow." ***Id.*** (citations omitted). Vail's listing of Deas as the residence's licensed contractor and her subsequent actions, including the memos placed in the permit file, were the result of a *mistaken* belief. There is no proof in the record, much less proof by a preponderance of the evidence, that the City or Vail "knew or had

14

reason to know" that its actions or inactions would result in the McMillins' claims or suits being barred by a statute of limitations.

¶27. We hold that the circuit court correctly found that the City did not waive its statute of limitations defense and that the statute of limitations had, in fact, run. Even though there is testimony that the McMillins delayed filing their suit based on Vail's 2007 memo, there is no dispute that the McMillins knew confusion surrounded the permit, as evidenced by their first Notice of Claim, which was timely. The McMillins elected not to proceed on that Notice of Claim, and that was their decision. Moreover, the circuit court erred in applying the doctrine of equitable estoppel. Thus, the McMillins' claims were barred by the statute of limitations.

### III. Damages Awarded to the McMillins Based on Deas Lawsuit

¶28. Because the City was immune from liability and the statute of limitations barred the McMillins' case, the circuit court erred in awarding the McMillins more than $105,000 in damages for the legal fees associated with the McMillins' suit against Deas based on their "reasonable reliance upon the contents of the Permit File and communication with the City of Tupelo resulting in the pursuit of Deas." We reverse the circuit court's award of all damages in the present case, including the attorneys' fees.

### IV. The McMillins' Cross-Appeal

¶29. The McMillins' cross-appeal centers on their request for attorneys' fees in the present case, which the circuit court denied as having "no authority in statute or case law[.]" Based on the application of the statue of limitations and the City's immunity from liability, it

15

follows that analysis of the McMillins' cross-appeal is unnecessary. The judgment of the circuit court on the McMillins' cross-appeal is affirmed.

## CONCLUSION

¶30. The present case involves a clerical mistake and numerous subsequent miscommunications that snowballed into what is now before us. Ultimately, the McMillins' claims were barred by the statute of limitations and the City is immune from liability. Therefore, the circuit court erred in finding that the City was not immune and allowing the case to proceed. The resulting damages awarded to the McMillins also were in error based on the statute of limitations and the City's immunity. Finally, the circuit court correctly found that the McMillins' claim for legal fees in the present case is without merit for the same reasons as stated above.

¶31. **ON DIRECT APPEAL: REVERSED AND RENDERED. ON CROSS-APPEAL: AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., AND BEAM, J., CONCUR. RANDOLPH, P.J., LAMAR AND MAXWELL, JJ., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶32. Because I believe this Court's deferential standard of review requires us to affirm the the circuit court's findings on liability, I respectfully dissent. I would affirm the circuit court's ruling that the City was equitably estopped from raising the statute of limitations defense due to Vail's intentionally misleading actions. I also would affirm the circuit court's finding that the City was not immune from liability under the Mississippi Tort Claims Act

16

for the McMillins' claims for repairs to their home (the Residence) and for the legal fees incurred in their lawsuit against Lawrence Deas. However, because the circuit court awarded the McMillins legal fees beyond what they incurred in their lawsuit against Deas, I would reverse that damages award and remand for the circuit court to award damages in an amount limited to the legal fees the McMillins incurred in their lawsuit against Deas.

*A. Facts*

¶33.    Since the facts of this case are complicated, I provide the following timeline:

**July 5, 2005**      A building permit for the Residence was issued to Joey Guyton with Precision Properties. Guyton was a licensed contractor, but his business partner, Jamie Ewing, was not licensed. Ewing and Guyton worked on construction of the Residence.

**July 5, 2005**      A "blue card" was issued for the Residence listing Guyton as the licensed contractor. Trial testimony established that a blue card is a document that contains information about a building project and is kept at the job site for reference by building inspectors.

**Apr. 4, 2006**     Guyton gave a handwritten note to the City's permit office manager, Marilyn Vail, stating, "I am withdrawing all permits attached to my contractor's license . . . . All permits are attached to this letter and effective April 4, 2006 at 12:00 p.m." Vail requested that Guyton provide the City a formal notice of his withdrawal of the permits.

**Apr. 5, 2006**     Lawrence Deas[3] and Jamie Ewing sent a letter to Vail stating, "Lawrence Deas has been hired by Harvester's Square Developers, LLC, to temporarily oversee construction of all residencies under construction until such time as another licensed contractor is found to take over said jobs." Both Deas and Ewing signed this letter. This letter never was placed in the permit file for the Residence.

**Apr. 11, 2006**    Guyton provided Vail formal notice of the withdrawal of his contractor's license from the building permits. His letter stated "I am

---

[3] Trial testimony established that Deas is an attorney and a licensed general contractor.

17

withdrawing the use of my general contractor's permit for the building permits listed below. I release the listed permits for the Harvester's Square developer to use another licensed general contractor to finish the projects." The letter listed eleven addresses, including nine addresses in the Harvester's Square development, and two other addresses, including that of the Residence.

**Apr. 11, 2006**   Vail issued a replacement blue card listing Deas as the licensed contractor associated with the building permit for the Residence. Vail testified that she mistakenly had interpreted the letters of April 4, 2006, April 5, 2006, and April 11, 2006, to mean that, when Guyton released the building permit for the Residence, Deas was going to take over the permit. In reality, the April 5, 2006, letter from Deas and Ewing indicated that Deas temporarily was taking over the Harvester's Square permits, not the permit for the Residence, which was not part of the Harvester's Square development.

**Aug. 18, 2006**   The Residence failed the final inspection, due to several building code violations and other problems.

**Aug. 24, 2006**   The McMillins purchased the Residence from Ewing.

**Aug. 26, 2006**   The McMillins discovered the replacement blue card and the final inspection report in a kitchen drawer at the Residence. They requested that Ewing remediate the problems with the Residence, but Ewing was unresponsive despite the McMillins' repeated requests that he correct the problems.

**Oct. 9, 2006**   A home inspector inspected the Residence and identified numerous items in need of maintenance and repair, including several building code violations.

**Oct. 2006**   The McMillins contacted the Mississippi Board of Contractors and were notified that Ewing was not licensed.

**Oct. 21, 2006**   The McMillins sent a letter to Ewing, Deas, and Guyton, and copied the City. The McMillins stated that they had notified the City that Ewing was unlicensed. They also requested a return of the purchase price of the Residence due to the numerous problems that Ewing had failed to correct.

| | |
|---|---|
| **Oct. 26, 2006** | In a letter to the McMillins, Guyton claimed that his business partnership with Ewing had dissolved in April 2006, releasing Guyton from liability for the Residence. |
| **Oct. 30, 2006** | In a telephone conversation with Terry McMillin, Deas denied any involvement with the Residence. |
| **Oct. 30, 2006** | Deas sent a letter to the McMillins stating, "I am not and have never been involved in the construction of your home. The inclusion of my name on any records in the Building Department of the City of Tupelo was the result of a clerical error. It is my understanding you have already been made aware of this fact, but Marilyn Vail or another employee of the Building Department can provide confirmation." Deas sent a copy of this letter to the City of Tupelo, and it was placed in the permit file for the Residence. |
| **Nov. 20, 2016** | Terry McMillin went to the permit office and talked to Vail. He testified that, when he asked Vail whether Deas had been involved in the construction of the Residence, Vail did not answer and told him to look at the permit file. Vail denied that Terry McMillin had asked her about Deas. Terry McMillin testified that, when he went upstairs to see the permit file, the clerk refused to let him see it. |
| **Dec. 7, 2006** | The McMillins sued Ewing for breach of contract and fraud in the Chancery Court of Lee County. |
| **Jan. 10, 2007** | Vail put a memo in the permit file that provided the following narrative: "Approximately one year ago, Joey Guyton and Jamie Ewing dissolved their partnership. Joey held the license for their business. Under state law, Jamie had 6 months to obtain a license before he would be in violation of the law for not having a contractor's license.[4] In the mean time, Jamie's attorney, Lawrence Dees [sic], agreed to take responsibility for his projects until Jamie could obtain his license. Jamie did obtain his state and local license in September 2006. I transferred all the previous permits to his responsibility." Vail testified that she placed a copy of this memo in the permit files of the Residence and all the other properties listed in Guyton's April 11, 2006, letter, and that the purpose of the memo was to provide information as to what had occurred. |

---

[4] At the trial, it was established that Vail's belief that Ewing had a six-month grace period in which to become licensed was erroneous.

**Aug. 23, 2007**    The McMillins served a notice of claim on the City based on Vail's negligence in allowing construction to continue under Ewing, an unlicensed contractor.

**Dec. 2007**    The McMillins issued a subpoena for the City's records, and for the first time they received the permit file. The April 5, 2006, letter was not in any of the subpoenaed records. Terry testified that they decided not to initiate litigation against the City because the permit file, including Vail's January 2007 memo, showed that Deas had succeeded Guyton as the licensed contractor for the Residence.

**Dec. 2008**    The McMillins joined Deas in their chancery court suit. Terry McMillin testified that they joined Deas in reliance on Vail's January 2007 memo.

**Jan. 6, 2009**    Ewing submitted an affidavit saying Deas had not been involved in constructing the Residence.

**Mar. 18, 2010**    Deas asked to be voluntarily dismissed from the McMillins' suit and attached an affidavit from Vail. Vail's affidavit explained that she erroneously had listed Deas as the licensed contractor on the building permit for the Residence. Vail stated that, if she had realized that the Residence had no licensed contractor when Guyton withdrew, "construction would have stopped until a licensed contractor was in place." Deas also attached his April 5, 2006, letter in which he assumed responsibility for Guyton's Harvester's Square permits. The McMillins, unsure what was true, elected not to dismiss Deas from the suit.

**Nov. 2011**    The Chancery Court of Lee County granted summary judgment to Deas on the ground that his listing as the licensed contractor was the result of a clerical mistake.

**Mar. 17, 2011**    The McMillins submitted their second notice of claim against the City.

**Oct. 13, 2011**    The McMillins filed the instant complaint against the City in the Circuit Court of Lee County.

*B. Standard of Review*

¶34. The circuit court judge is the finder of fact in a lawsuit brought under the Mississippi Tort Claims Act. Miss. Code Ann. § 11-46-13(1) (Rev. 2012). This Court affords a trial judge sitting without a jury the same deference as a chancellor. *City of Jackson v. Sandifer*, 107 So. 3d 978, 983 (Miss. 2013). If the circuit court's fact findings are supported by substantial, credible, and reasonable evidence, then this Court must affirm. *City of Jackson v. Lewis*, 153 So. 3d 689, 693 (Miss. 2014). We will not disturb the circuit court's conclusions unless they were manifestly wrong, clearly erroneous, or resulted from the application of the wrong legal standard. *Id.* The circuit court has the sole authority to determine the credibility of witnesses. *City of Jackson v. Lipsey*, 834 So. 2d 687, 691 (Miss. 2003). Additionally, the circuit court, as the fact finder, is entrusted with resolving conflicts in the evidence. *Borne v. Estate of Carraway*, 118 So. 3d 571, 581 (Miss. 2013).

*C. Analysis*

1. Equitable estoppel

¶35. Under the Mississippi Tort Claims Act, a claimant must commence an action "within one (1) year after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based." Miss. Code Ann. § 11-46-11(3)(a) (Rev. 2012). Statutory tolling periods extend the time the plaintiff has to commence an action. *Id.*

¶36. The alleged actionable conduct that formed the basis of the McMillins' circuit court lawsuit against the City occurred in 2006 and 2007. The McMillins filed their first notice of claim against the City in August 2007. Terry McMillin testified that the plaintiffs received the permit file for the Residence in December 2007. The permit file did not contain Deas's

letter of April 5, 2006, but it did contain Vail's January 2007 memo stating that Deas had succeeded Guyton as the licensed contractor for the Residence. Terry McMillin testified that, because the permit file showed that Deas had taken over as the licensed contractor for the Residence, no misconduct by the City was apparent, so the McMillins decided not to sue the City. Terry McMillin testified that, in March 2010, during the litigation against Deas, he received Vail's affidavit stating that she mistakenly had listed Deas as the licensed contractor for the Residence. At that time, Terry McMillin also received Deas's letter dated April 5, 2006. Based on this new information, on March 17, 2011, the McMillins filed a second notice of claim against the City, and they filed suit against the City on October 13, 2011.

¶37.    The circuit court found that the McMillins' lawsuit against the City was time barred, but that the City was equitably estopped from raising the time bar as a defense due to intentionally misleading conduct by Vail. The circuit court made two fact findings regarding Vail's conduct that are central to this case. First, the circuit court found that Vail's substitution of Deas as the licensed contractor after Guyton's withdrawal was a clerical mistake caused by Vail's misreading the letters from Guyton, Ewing, and Deas. Second, the circuit court found that Vail had placed the January 2007 memo in the permit file in an effort to "cover up her purportedly 'honest mistake.'"

¶38.    To prevail on a claim of equitable estoppel, a plaintiff must prove by a preponderance of the evidence that "(1) it was induced by the conduct of [the defendant] not to file its complaint sooner, (2) resulting in its claim being barred by the [applicable] limitations, and (3) [the defendant] knew or had reason to know that such consequences would follow."

***Townes v. Rusty Ellis Builder, Inc.***, 98 So. 3d 1046, 1055 (Miss. 2012). Also, the defendant's conduct must have been inequitable. ***Miss. Dep't of Public Safety v. Stringer***, 748 So. 2d 662, 665 (Miss. 1999).

¶39.    I would hold that the circuit court's finding that the elements of equitable estoppel were met was supported by substantial evidence and was not manifestly wrong or clearly erroneous. The circuit court's finding that the permit file showed that Deas had succeeded Guyton as the licensed contractor for the Residence was substantially supported by contents of the permit file. Although the permit file contained an October 30, 2006, letter from Deas denying any involvement with the Residence, all representations by the City contained in the permit file, including Vail's January 2007 memo, were to the effect that Deas had succeeded Guyton as the licensed contractor. The circuit court was entitled to rely on Terry McMillin's testimony that the permit file, which showed that a licensed contractor was in place at all times, had induced the McMillins not to sue the City. Terry McMillin's testimony in this regard was corroborated by the fact that the McMillins did not sue the City until they had received Vail's affidavit, in which Vail admitted that she mistakenly had listed Deas as the contractor. Further, the circuit court was entitled to weigh Vail's credibility and to find that her placement of the January 2007 memo in the file was not innocent, but rather was an intentional effort to conceal her mistake.[5] And it is elementary that Vail, as a public official, reasonably should have known that placing misinformation in the permit file, a public record,

---

[5] The majority simply ignores the circuit court's finding that Vail engaged in intentionally misleading conduct, holding that Vail only made a clerical mistake that cannot, as a matter of law, form a basis for equitable estoppel. In so doing, the majority invades the fact finding function of the circuit court.

23

could cause litigation to be delayed or otherwise affected. Certainly, placing intentionally misleading information identifying the responsible licensed contractor in a permit file can be considered inequitable conduct. Applying this Court's deferential standard of review, I would affirm the circuit court's finding that the City was equitably estopped from raising the statute of limitations as a defense to the McMillins' lawsuit.

### 2. Liability under the Mississippi Tort Claims Act

¶40. The City claimed immunity under Mississippi Code Section 11-46-9(1)(h), which provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (h) Arising out of the issuance, denial, suspension or revocation of, or the failure or refusal to issue, deny, suspend or revoke any privilege, ticket, pass, permit, license, certificate, approval, order or similar authorization where the governmental entity or its employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked unless such issuance, denial, suspension or revocation, or failure or refusal thereof, is of a malicious or arbitrary and capricious nature;

Miss. Code Ann. § 11-46-9(1)(h) (Rev. 2012).

¶41. The circuit court found that Vail had acted arbitrarily and capriciously because her mistake in listing Deas as the contractor for the Residence had violated her duty as the permit clerk to ensure that builders of residential property in the City are licensed. The circuit court found that the City, acting through the permit office, had duties to:

> (1) ensure that a licensed contract[or] was working on the Home for the entirety of the construction; (2) on the withdrawal of the Guyton license, stop construction; (3) prevent construction from resuming until such time as a

24

licensed contractor agreed to be responsible for the construction; (4) properly process the Guyton withdrawal; (5) stop construction when the Permit expired; and (6) refrain from placing in the file misleading untruthful papers.

¶42. The majority finds that the circuit court erred in finding that the City had these duties.

In so finding, the majority relies on Mississippi Code Section 73-59-17, which provides:

> The building official, or other authority charged with the duty of issuing building or similar permits, of any municipality or county, shall refuse to issue a permit for any undertaking which would classify the applicant as a residential builder or remodeler under this chapter unless the applicant has furnished evidence that he is either licensed as required by this chapter or exempt from the requirements of this chapter. The building official, or other authority charged with the duty of issuing building or similar permits, shall also report to the board the name and address of any person who, in his opinion, has violated this chapter by accepting, or contracting to accomplish, work which would classify the person as a residential builder or remodeler under this chapter without a license or acknowledgment.

Miss. Code Ann. § 73-59-17 (Rev. 2012). The majority finds that, because Guyton was licensed when the City issued the permit, the City violated no duty under this statute. Even assuming that Section 73-59-17 imposed no duties on the City beyond refraining from issuing a building permit to an unlicensed contractor, the record in this case shows that a city ordinance imposed additional duties upon the permit office.

¶43. In her affidavit, Vail testified about Guyton's presentation of the handwritten note on April 4, 2006, stating that he was withdrawing all permits attached to his contractor's license. She stated:

> I told Mr. Guyton that I needed the statement notarized and that he needed to state he released the permits so that construction could continue under the same permits once a licensed contractor took over. *Otherwise, construction on the houses under construction pursuant to the various building permits in his name would have to stop and could not begin again until a new building permit was issued. This is a requirement of Tupelo's Development Code.*

(Emphasis added.) Vail rendered further testimony about the code requirement at the trial. She acknowledged that the city ordinance requiring that the City stop construction upon the withdrawal of the licensed contractor associated with the permit was contained in the Tupelo Development Code that had been in place until November 1, 2013. She explained that, according to this city ordinance, a licensed contractor who quits must release the permit so construction can continue under a new licensed contractor, or construction must stop and cannot begin anew until a new permit is issued. In Vail's affidavit, she stated that, if she had realized that the Residence was without a licensed contractor during its construction, "construction would have been stopped until a licensed contractor was in place." David Wammack, the City's chief building inspector, also testified about the ordinance, stating that "one of the requirements of the City of Tupelo Code of Ordinance is that there be a licensed contractor on the project . . . ."

¶44.    The city ordinance provided a basis for the circuit court's finding that the City had a duty to ensure that a licensed contractor was working on the Residence and, when Guyton withdrew, to stop construction unless Guyton released the permit to another licensed contractor. The circuit court found that Vail had breached that duty by listing Deas erroneously as the successor contractor on the Residence, and that this action was arbitrary and capricious. The majority finds that Vail did not act arbitrarily and capriciously because her listing of Deas was a clerical mistake that cannot rise to the level of arbitrary and capricious action as a matter of law. I disagree. As the majority recognizes, "the failure of an agency to abide by its rules is per se arbitrary and capricious as is the failure of an

26

administrative body to conform to prior procedure without adequate explanation for the change." ***Lowe v. Lowndes Cty. Bldg. Inspection Dep't***, 760 So. 2d 711, 714 (Miss. 2000) (quoting ***Miss. Dep't of Envtl. Quality v. Weems***, 653 So. 2d 266 (Miss. 1995)). The circuit court held that Vail's actions were arbitrary and capricious because, in listing Deas as the contractor for the Residence, she failed to follow the applicable rules. Because the evidence supported the finding that Vail failed to follow a city ordinance, I would affirm the circuit court's finding that Vail's error in listing Deas as the licensed contractor for the Residence was arbitrary and capricious.

¶45.     I also would affirm the circuit court's finding that Vail acted arbitrarily and capriciously by placing the January 2007 memo in the permit file. Although Vail testified that, when she authored the memo, she legitimately believed that Deas had succeeded Guyton as the licensed contractor for the Residence, the circuit court was entitled weigh the evidence and make a determination about Vail's credibility. ***Lipsey***, 834 So. 2d at 691. The circuit court's finding that Vail intentionally had placed false information in the permit file was supported by substantial evidence. The permit file contained Deas's October 26, 2006, letter denying any involvement with the Residence's construction and stating that the inclusion of his name in the permit file was the result of a clerical error by the City. Terry McMillin testified that, on November 20, 2006, he went to the permit office and asked Vail whether Deas had been involved in the construction, and she responded by directing him to the permit file, which he was unable to obtain. And missing from the permit file was the April 5, 2006, letter that was the key to understanding that Deas's listing as the contractor was erroneous.

27

This evidence strongly supported the circuit court's credibility determination that Vail's intent when she authored the January 2007 memo was to make it appear that a licensed contractor had been assigned to the construction of the Residence at all times.

¶46. I next address the City's argument that Vail's actions were subject to discretionary-function immunity under Mississippi Code Section 11-46-9(1)(d), which states:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused; . . . .

Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012). A ministerial function is one that is "positively imposed by law." *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 136 (Miss. 2013) (citing *Pratt v. Gulfport–Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 72 (Miss. 2012)). The City had a duty, positively imposed by its ordinance, to ensure that, if a licensed contractor withdrew, another was substituted or the construction halted until a new permit was issued. The City had no discretion to disobey this mandate. The City's duty under the ordinance was ministerial, not discretionary, and the City was not entitled to discretionary-function immunity.

¶47. The circuit court also held that the City failed to exercise ordinary care, a finding that implicates immunity under Mississippi Code Section 11-46-9(1)(b). That section provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

. . .

> (b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;

Miss. Code Ann. § 11-46-9(1)(b) (Rev. 2012). Under this section, a governmental entity is "protected from liability while performing or failing to perform a statutory duty so long as ordinary care is exercised." *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So. 2d 1234, 1240 (Miss.1999). "The question of whether ordinary care was, in fact, exercised is for the trial court, sitting without a jury, to decide." *Stewart ex rel. Womack v. City of Jackson*, 804 So. 2d 1041, 1048 (Miss. 2002) (quoting *Lang*, 764 So. 2d at 1240)."The standard of care applicable in cases of alleged negligent conduct is whether the party charged with negligence acted as a reasonable and prudent person would have under the same or similar circumstances." *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 175 (Miss. 1999).

¶48. The circuit court found that the City had not acted with ordinary care in the performance of its duties imposed by law. The circuit court stated:

> That the office placed Deas's name as the contractor of record was, at first, a mistake. However, when the office was put on notice by Deas that such a mistake had been made, ordinary care required the Defendant to notify the people concerned and not subsequently file a paper in plain contradiction of the truth. The Defendant was also put on notice by letters from Dr. McMillin, Deas, and calls from [the McMillins' realtor] Sue Gardner. Even a visit by Dr. McMillin to their office about why Deas's name was associated with this Home did not provide any answers to the Plaintiffs. Instead, Vail magnified the error by placing the January 2007 Memo in the Plaintiffs['] Permit File stating Deas was "taking responsibility" for the Home. Even when asked by Dr. McMillin directly, Vail refused to answer his questions, compounding the error. Vail told Dr. McMillin to go look at his Permit File but when he asked to see his file, another City employee refused to let him see his own file.

29

The paperwork in the Home's Permit File certainly shows that questions were being asked by the Plaintiffs, that the Plaintiffs had hired an attorney and were contemplating filing suit, and that Sue Gardner and the Plaintiffs were telling [Vail that] Ewing was not licensed with the Mississippi Board of Contractors. Defendants still continued to ignore the problem and did not use ordinary care to address the situation and relieve the confusion. Vail did the opposite by placing the January 2007 memo in the file. Ordinary care, at the very least, would require Vail to call, mail a letter or email the Plaintiffs about issues they were having with their home. This was, at the very least, negligent misrepresentation.

These fact findings were fully supported by the record. I would find that the circuit court did not manifestly err in finding that the City failed to exercise ordinary care in the performance of the duties imposed by the ordinance.

¶49. The circuit court held that, but for Vail's failure to process Guyton's withdrawal from the construction of the Residence properly, construction would have stopped in April 2006. And, the circuit court held that, if Vail had properly filed the April 5, 2006, letter and refrained from placing the January 2007 memo in the permit file, acts that falsely implicated Deas as the licensed contractor, then the McMillins would not have incurred legal fees in their litigation against Deas. I would find that the circuit court committed no legal error in making these proximate-cause findings, which were supported by substantial evidence.

¶50. The circuit court awarded the McMillins $9,319.23 as damages for the cost of repairing the shoddy work that was performed on the Residence after Guyton's departure on April 11, 2006. The circuit court also found that the McMillins were entitled to damages in the amount of the legal fees they had incurred in their suit against Deas. On appeal, the City complains that the award of $105,894.39 in legal fees was erroneous because it included fees that the McMillins had incurred in their litigation against Ewing and the two banks. Because

30

the circuit court's findings do not support the McMillins' recovery of attorney fees incurred in their litigation against Ewing and the banks, nor did they claim a right to recover such fees, I would reverse the award of legal fees and remand for the circuit court to award the McMillins the amount of legal fees they incurred in litigation against Deas.

¶51.  In conclusion, Vail's clerical mistake in substituting Deas as the licensed contractor for the Residence on April 11, 2006, was arbitrary and capricious because Vail's actions violated a city ordinance. I also would hold that the City is not entitled to discretionary-function immunity, and I would affirm the chancellor's fact finding that the City failed to exercise ordinary care in the performance of duties imposed by a city ordinance. And I believe the majority errs by reweighing the evidence before the circuit court and finding that Vail's misconduct was limited to her clerical mistake. The circuit court found that Vail intentionally placed a false memorandum in the permit file that caused the McMillins to drop their action against the City and pursue a chancery court suit against Deas.

¶52.  I would affirm the circuit court's finding that the City was equitably estopped from raising the statute of limitations defense due to Vail's misleading conduct. I also would affirm the circuit court's finding that the City was not immune from liability under the Mississippi Tort Claims Act. I would affirm in part and reverse in part and remand for the circuit court to award the McMillins legal fees in the amount that they incurred in litigation against Deas.

KING, J., JOINS THIS OPINION.